Charlene GELATT, Individually and as Parent and Natural Guardian of Morgan Gelatt, an Infant, Plaintiffs,

v.

The COUNTY OF BROOME, NEW YORK, The Broome County Probation Department, New York, Richard A. Wahila, Individually and in his official capacity as Probation Officer, "John Doe" and "Jane Doe", Individually and in their official capacities as Probation Officers of Broome County whose identities are presently unknown to the Plaintiffs, Defendants.

No. 90–CV–93.

United States District Court, N.D. New York.

Jan. 15, 1993.

E. Stewart Jones, Troy, NY (Peter J. Moschetti, Jr., of counsel), for plaintiffs.

Joseph James Slocum, Broome County Atty., Binghamton, NY (Frank H. Heffron, Sr. Asst. County Atty., of counsel), for defendants.

Robert Abrams, Atty. Gen., Albany, NY (Peter H. Schiff, Deputy Sol. Gen., Michael S. Buskus, Asst. Atty. Gen., of counsel), for amicus curiae.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge.

### INTRODUCTION

Before this court is a motion by the defendants[1] for summary judgment. Their sole ground for seeking this relief is that the defendant Wahila is absolutely immune from a suit such as this.

The parties have submitted on their papers, electing not to provide oral argument on the issue here presented.

During deliberations on this motion, it became clear that resolution of the issues presented could have an impact on the conduct, policies and procedures of probation officers throughout New York State. Thus, it was the decision of this court to solicit the New York State Division of Probation and Correctional Alternatives as amicus curiae.[2] That agency was contacted and agreed to participate through the offices of the Solicitor General and the Attorney General of the State of New York. The amicus memorandum was filed with the court on December 4, 1992. In this memorandum, the amicus asserts that the complaint should be dismissed on the ground of absolute immunity or in the alternative, on the ground of qualified immunity.

### FACTUAL BACKGROUND

The plaintiff mother, Charlene Gelatt [hereinafter referred to as "plaintiff"], was sentenced on April 8, 1988, by the Honorable Patrick D. Monserrate, then Broome County Court Judge, to five years probation on her plea of guilty to the charge of Grand Larceny in the Third Degree. As a condition of her probation, the plaintiff was required to pay restitution in the total amount of $11,508.55 plus a five percent surcharge (amounting to an additional $575.42), payable in monthly installments of $200.

Shortly after her sentencing and pursuant to the plaintiff's request, her probation supervision was transferred to Florida pursuant to the Interstate Compact. *See* N.Y.Exec.Law § 259–m (McKinney 1982). She was advised of the transfer by letter dated April 18, 1988. That letter also advised the plaintiff that she was to remit her

1. There is some question about whether this motion was brought on behalf of all of the defendants or only on behalf of Robert Wahila, the probation officer involved. While the Notice of Motion states "defendants," the memorandum of law only addresses the absolute immunity issue as it relates to Robert Wahila. Additionally, the plaintiffs respond to the motion as if it was a summary judgment motion brought only on behalf of Officer Wahila. In light of the lack of specificity of the papers submitted, this court is considering this motion for summary judgment only as it relates to defendant Robert Wahila.

2. The Division is an oversight agency. Among its other statutory duties, its duties include (1) securing the effective application of the probation system; (2) enforcing the probation laws; and (3) enforcing the laws relating to family courts throughout the state. N.Y.Exec.Law § 243(1).

restitution payments directly to the Broome County Probation Department.

In December of 1988, defendant Robert Wahila, a Probation Officer with the Broome County Probation Department since 1973, took over the plaintiff's file. Officer Wahila in familiarizing himself with the plaintiff's file, found that the file contained copies of letters dated November 1, 1988 to the plaintiff in Florida and to her supervising probation officer in Florida, Rosa Greene, from the previous probation officer assigned to the file. Both the letter to the plaintiff and the letter to Officer Greene advised that the plaintiff had failed to make restitution payments and warned that a violation of probation would be filed if there was no payment made by November 30, 1988. The letter to Florida Probation Officer Greene also requested a status report on the plaintiff. There was no response to either letter in the file and no restitution payments were forthcoming.

On January 12, 1989, Officer Wahila wrote to the plaintiff threatening her with a violation of probation if restitution was not made. This letter was returned by the post office as undeliverable.

On February 2, 1988, Officer Wahila submitted his violation of probation report to Judge Monserrate. In his report, Officer Wahila wrote that "this writer" (referring to himself) had sent the above-described letters (referring both to the November 1, 1988 letters written by the previous probation officer, and the January 12, 1989 letter he had written) and that the plaintiff was in violation of the terms and conditions of her probation in that: 1) she had absconded from supervision; and 2) she had failed to make restitution. He requested that the court sign the Violation of Probation, issue a Declaration of Delinquency and issue an arrest warrant. The court, apparently relying on Officer Wahila's representations, complied with his requests and signed the Violation of Probation/Declaration of Delinquency and issued an arrest warrant.

The plaintiff was arrested on March 16, 1989, in Florida. She was held in the Pinellas County (Florida) Jail for 14 days prior to being extradited to New York. It took six days to transport her to Binghamton, during which time she was housed in various jails and prisons. On April 16, 1989, the plaintiff was brought before Judge Monserrate, who by then had spoken personally to the Florida Probation Officer, Rosa Greene. Officer Greene had advised that she had been monitoring the plaintiff since her transfer to Florida and had been aware of the plaintiff's change in residence and of her failure to pay restitution. As is reflected in the transcript of the April 16, 1989 court appearance, Officer Greene had explained to the judge that the plaintiff had been terminated from her job after complying with Officer Greene's directive that she inform her employer that she was on probation. As such, Judge Monserrate, after a lengthy on-the-record apology, dismissed the Violation of Probation and released the plaintiff. Thereafter, the plaintiffs initiated this law suit.

The plaintiffs bring their complaint pursuant to section 1983 of the Civil Rights Act. The plaintiffs allege simple and gross negligence, recklessness, malice and intentional conduct on the part of Officer Wahila and on the part of the Broome County Probation Department in failing to train and supervise Officer Wahila. Specifically, the causes of action alleged in the complaint are:

1) on behalf of Charlene Gelatt, seeking $ 5 million, for the violation of her constitutional rights to be free from:

   a) the intentional infliction of emotional distress;

   b) interference with her constitutionally protected family relationships;

   c) the negligent performance of probation duties by her probation officer;

   d) illegal arrest and imprisonment;

   e) summary punishment without a trial;

   f) the denial of due process rights;

   g) the use of excessive force; and

   h) unlawful seizure of her person; and

2) on behalf of Morgan Gelatt, Charlene Gelatt's six year old daughter, for $500,000, due to the deprivation of love, care, support, companionship and

parenthood of her mother, thus causing emotional and mental distress.

In addition, the plaintiffs seek reasonable attorneys' fees and the costs incurred in litigating this action pursuant to 42 U.S.C. § 1988.

The defendants, in their answer to the complaint, interpose the following defenses:

1) failure to state a claim;

2) failure to join necessary parties;

3) absolute immunity;

4) lack of jurisdiction over the defendants Doe;

5) plaintiff Charlene Gelatt's injuries were caused by her own culpable conduct in violating the terms of her probation;

6) plaintiffs' injuries were caused by other defendants not here joined; and

7) defendants acted in good faith.

As stated, the court now has before it a motion for summary judgment on the ground that the defendant, Robert Wahila, has absolute immunity.

## DISCUSSION

Although the defendant asserts only the defense of absolute immunity, the issues of absolute and qualified immunity are so interrelated, [as amply evidenced by the amicus memorandum] qualified immunity will be discussed as well.

The defendant contends that he is entitled to absolute immunity under one of two alternative theories:

1) that his actions in presenting the violation of probation report and in requesting the Violation of Probation/Declaration of Delinquency and in requesting the issuance of an arrest warrant were so "intimately associated with the judicial process" that he should be considered as an arm of the court and therefore entitled to the absolute immunity that judges are afforded when acting in their judicial roles; or

2) that in acting as such, he was functioning much as does a prosecutor and therefore is entitled to the same absolute immunity that a prosecutor would enjoy in that function.

The Supreme Court has consistently held that government officials are entitled to some type of immunity from lawsuits seeking damages so as to shield them from undue interference with their duties and from potentially disabling threats of liability. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396, 402 (1982). Thus, two types of immunity have evolved: absolute immunity and qualified immunity. Absolute immunity, as its name implies, is a complete defense to civil damage actions; it completely forecloses a suit for damages. Qualified immunity, on the other hand, shields the official from civil liability when, in performing a discretionary function, his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would or should have known. *Id.* 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410, *Zavaro v. Coughlin*, 970 F.2d 1148, 1153 (2d Cir.1992). It is the burden of the official seeking the immunity to demonstrate that he is entitled to it. *Butz v. Economou*, 438 U.S. 478, 506, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895, 915 (1978); *Zavaro v. Coughlin*, 970 F.2d at 1153 (*quoting Krause v. Bennett*, 887 F.2d 362, 368 (2d Cir.1989).

The general approach to questions of immunity under section 1983 is now well settled. The initial inquiry is whether the official claiming immunity under section 1983 can point to a common law counterpart to the privilege he asserts. *Malley v. Briggs*, 475 U.S. 335, 339–40, 106 S.Ct. 1092, 1095, 89 L.Ed.2d 271 (1986) (*citing Tower v. Glover*, 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984)). The common law to which the Supreme Court referred in *Malley* is that which existed in 1871 when the Civil Rights Act was first enacted. *Id.*

Here, the defendant does not indicate what, if any, common law counterpart to absolute immunity is applicable in this situation. Where there is no available common law equivalent, the Supreme Court has made it clear "that a functional approach" to the immunity analysis is to be employed. *Forrester v. White*, 484 U.S. 219, 223–24,

108 S.Ct. 538, 542, 98 L.Ed.2d 555, 562–63 (1988); *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396; *Stewart v. Lattanzi,* 832 F.2d 12, 13 (2d Cir.1987). The functional approach requires that the court rather than consider the official's position within the government, consider the function he performed; the function of the official determines what level of immunity, if any, will be applied. *Id.*

With the functional approach, the court first must examine the nature of the official's functions being challenged and then must determine whether the threat of exposure to civil liability would adversely impact upon the exercise of those functions. *Forrester v. White,* 484 U.S. at 224, 108 S.Ct. at 542, 98 L.Ed.2d at 563. In making such a determination, the courts are reluctant to give complete deference to the official's functions. Qualified immunity has been termed "the norm;" absolute immunity is of a "rare and exceptional character." *Burns v. Reed,* —— U.S. ——, ——, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547, 557 (1991) (citations omitted); *Stewart v. Lattanzi,* 832 F.2d at 13 (citations omitted).

In this case, the plaintiff challenges the defendant's conduct in filing (1) the violation of probation report with the sentencing judge and in (2) seeking an arrest warrant. In order to evaluate Officer Wahila's conduct—his function here—it is necessary to review the procedural framework applicable to probation and probation violations in New York.

In New York, the sentence of probation is a revocable sentence. That is, the probationer is in the custody of the court during the term of probation. N.Y.Crim.Proc.Law § 410.50(1) (McKinney 1983). Supervision of that probation is the obligation of the probation department. *Id.* at § 410.50(2). If probation supervision has been transferred to another state, the sentencing court may, when transferring the supervision, determine that it will retain jurisdiction over violations of the terms and conditions of probation, in which case, only that court has the power to revoke probation and resentence the probationer. N.Y.Exec. Law § 259–m(1)(2) (McKinney 1982); N.Y.Crim.Proc.Law § 410.80(2) (McKinney Supp.1993). If, in approving the transfer of probation supervision, the sentencing court relinquishes its jurisdiction entirely, then the court having jurisdiction over the case in the receiving state has the authority to preside over violations of that probation. *Id.* Here, the sentencing court retained jurisdiction over the plaintiff's probation.

When the court has reasonable cause to believe that there has been a violation of the terms and conditions of probation, the probationer can be summoned into court to answer for that violation. The summons can take the form of either a simple notice by the court, *id.* at § 410.40(1), or an arrest warrant, *id.* at § 410.40(2). When the probationer is brought into court on the Violation of Probation, he/she is arraigned thereon and is entitled to a hearing on the allegation(s) contained therein. *Id.* at §§ 410.70(1) & (2). Thereafter, the court makes the determination whether there is sufficient evidence to make a finding of a violation. If the court finds that the probationer is in violation of the terms and conditions of his/her probation supervision, then the court will revoke the probationary sentence originally imposed and resentence the probationer to what it determines to be the appropriate sentence. *Id.* at § 410.70(5) (McKinney Supp.1993).

In the present case, defendant Wahila presented a violation of probation report to Judge Monserrate which included a request for a warrant. As stated, after reviewing the report, Judge Monserrate signed the Violation of Probation and Declaration of Delinquency and ordered an arrest warrant to be issued. Thereafter, the plaintiff was arrested on the warrant in Florida and after spending fourteen days in a local jail facility, was extradited to Binghamton, New York, where the Violation of Probation was dismissed and she was released from custody.

The defendant argues that in applying the functional approach to the immunity issue, this court should view his conduct in

reporting to the judge and in seeking a Violation of Probation and Declaration of Delinquency and an arrest warrant as conduct "intimately associated with the judicial [process]" and therefore entitling him to absolute immunity. *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128, 143 (1976); *Dorman v. Higgins,* 821 F.2d 133, 136 (2d Cir.1987); *see Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Bradley v. Fisher,* 80 U.S. 335 (13 Wall. 335), 20 L.Ed. 646 (1871). Alternatively, the defendant argues this his function is analogous to that of a prosecutor and as such he should be entitled to the same absolute immunity as are prosecutors. *See Imbler,* 424 U.S. at 430–31, 96 S.Ct. at 994–95, 47 L.Ed.2d at 143–44; *Dacey v. Dorsey,* 568 F.2d 275, 278 (2d Cir.), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2238, 56 L.Ed.2d 405 (1978).

### *"Judicial Function" Analysis*

■ The Supreme Court has articulated several factors which it deems important in determining whether absolute immunity is applicable to a particular official function. For judicially-related conduct in particular, the court has enumerated six considerations that support the need for absolute immunity:

1) the need to assure that the individual can perform his functions without harassment or intimidation;

2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;

3) insulation from political influence;

4) the importance of precedent;

5) the adversary nature of the process; and

6) the correctability of error on appeal.

*Cleavinger v. Saxner,* 474 U.S. 193, 202, 106 S.Ct. 496, 501, 88 L.Ed.2d 507, 514 (1985); *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895. *See also Mitchell v. Forsyth,* 472 U.S. 511, 521–23, 105 S.Ct. 2806, 2813–14, 86 L.Ed.2d 411, 421–23 (1985).

Absolute judicial immunity has been held to apply to those who perform functions that are integrally related to the judicial process. *See, e.g., Oliva v. Heller,* 839 F.2d 37, 40 (2d Cir.1988) (judicial law clerks); *Mitchell v. McBryde,* 944 F.2d 229, 230 (5th Cir.1991) (same); *Dellenbach v. Letsinger,* 889 F.2d 755 (7th Cir.1989) (court personnel including court reporters), *cert. denied,* 494 U.S. 1085, 110 S.Ct. 1821, 108 L.Ed.2d 950 (1990); *Rogers v. Bruntrager,* 841 F.2d 853, 856 (8th Cir.1988) (court clerks); *Scott v. Dixon,* 720 F.2d 1542, 1546 (11th Cir.1983) (same), *cert. denied,* 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984); *Tarter v. Hury,* 646 F.2d 1010, 1013 (5th Cir.1981) (same).

One function for which probation officers have been consistently afforded absolute immunity has been in the preparation of pre-sentence reports. *See, e.g., Dorman v. Higgins,* 821 F.2d at 136 (federal probation officers); *Demoran v. Witt,* 781 F.2d 155, 157 (9th Cir.1986) (state probation officers); *Shelton v. McCarthy,* 699 F.Supp. 412, 414 (W.D.N.Y.1988) (same). However, in analyzing the "function" of a probation officer in his/her role of submitting a violation of parole report and requesting the issuance of an arrest warrant, as it may apply to absolute judicial immunity, the court has found but a few cases on point. The most frequently cited case is that of *Galvan v. Garmon,* 710 F.2d 214 (5th Cir.1983), *cert. denied,* 466 U.S. 949, 104 S.Ct. 2150, 80 L.Ed.2d 536 (1984). *See also Griffin v. Leonard,* 821 F.2d 1124 (5th Cir.1987); *Ray v. Pickett,* 734 F.2d 370, 374 (8th Cir.1984). In the *Galvan* case, the facts were virtually identical to those here presented: the probationer brought a section 1983 civil rights action for damages against the probation officer who had mistakenly caused his arrest and incarceration. Although the *Galvan* court did not enter into a lengthy discussion of the immunity issue, it resolved that in presenting a violation of probation to the court for signature and in requesting a warrant, the probation officer was not entitled to the same level of immunity to which he is entitled in preparing a presentence report—absolute immunity. 710 F.2d at 215. In finding that the two

functions are different, the court found that the presentation of a violation of probation and request for a warrant was "less intimately associated with the judicial process" than was the preparation of a presentence report and as such entitled the probation officer to only qualified immunity. *Id.*

Preparation of a presentence report by a probation officer and the initiation of probation revocation proceedings resulting in an arrest warrant are of a substantially different nature. The soundness of the *Galvan* court's conclusions is manifest when one considers pertinent factors from the *Mitchell* and *Cleavinger* cases:

1) Presentence reports are prepared at the direction of the court and are an integral part of the adjudicatory process. Probation revocation proceedings, on the other hand, generally are instituted upon the initiative of the probation officer and not the court, and the court is constrained by the availability of only one side of the facts— the probation officer's.

2) The sentencing process is wholly adversarial. A defendant and defense counsel are present and can therefore challenge the contents of the presentence report. Conversely, a probationer has no such opportunity in the context of probation revocation. The judge authorizing the issuance of a Violation of Probation and an arrest warrant relies on the one-sided account of the probation officer in deciding whether to authorize the Violation of Probation and to issue a warrant for the probationer's arrest or to refuse the probation officer's requests; neither the probationer nor his/her attorney is present for the application. Unlike the presentence report context, this non-adversarial context significantly increases the risk that the probationer's liberty, his/her freedom from incarceration, will be unjustifiably denied during the period between arrest and the revocation hearing. This risk is not present in the presentence context because the report is issued and the sentencing hearing proceed simultaneously.

3) The availability of prompt error correction (appeal) prior to an unjustifiable deprivation of liberty, the adversarial nature of the sentencing process, and the close oversight, indeed control, given the sentencing process by the judge safeguard the rights of the defendant. In the context of probation revocation, however, none of these safeguards operate to protect the probationer against the possibility of unjustified/illegal/irresponsible deprivation of his/her liberty interests until such time as he/she is called into court and represented by counsel before the judge.

4) There is no viable alternative to damages as a means of redressing the injury brought about by an improper/inappropriate illegal incarceration. By the time the error is discovered at a revocation hearing, the harm to the probationer has already been accomplished since that individual has already been arrested and held in a jail pending the revocation hearing. One cannot enjoin that which has already taken place, nor can declaratory relief cure what would then be past injury.

It may well be as the Supreme Court of Arizona sitting en banc found, that absolute judicial immunity, as it applies to nonjudicial officials, is in effect a derivative immunity, taken from the role of the official. *Acevedo v. Pima County Adult Probation Dep't,* 142 Ariz. 319, 321–22, 690 P.2d 38, 40–41 (Ariz.1984). The court reasoned that if the official performed a function at the *direction* of a judge, then there should be absolute immunity afforded to that official in so far as that function is concerned. If the function performed is not at the behest or direction of the court, then the official would be entitled to only qualified immunity. The court need not decide whether such a strict interpretation is appropriate. In the present case the court finds, in applying the functional approach analysis, that the function of a probation officer in submitting a violation of probation report and requesting a warrant is not performing a "judicial function" and therefore, under that theory, is not entitled to absolute immunity.

*"Prosecutorial Function" Analysis*

■ The defendant, with support from the amicus curiae, contends, in the alterna-

tive, that he is entitled to absolute immunity stemming from his role as a prosecutor in the prosecution of the Violation of Probation.

At common law, the prosecutor was absolutely immune from civil liability in acting in accordance with his public prosecutorial duties. *Yaselli v. Goff,* 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927). However, the Supreme Court has expressly limited absolute prosecutorial immunity to those roles wherein the prosecutor initiates the prosecution and presents the case against the defendant. *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–94, 47 L.Ed.2d 128; *see also Powers v. Coe,* 728 F.2d 97, 103–04 (2d Cir.1984); *Taylor v. Kavanagh,* 640 F.2d 450, 452 (2d Cir.1981). The court has declined to determine what the scope of immunity would be for a prosecutor's administrative and investigatory functions. *Id.*

In a recent Supreme Court decision, the court seems, at first reading, to be granting absolute immunity to a prosecutor when he seeks a warrant, *Burns v. Reed,* — U.S. —, 111 S.Ct. 1934, 114 L.Ed.2d 547, which would seem to be in contravention of its earlier decision in *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) wherein it had held that a police officer seeking a warrant is entitled to only qualified immunity. However, upon a careful reading of *Burns,* the court made the determination it did because the prosecutor there was acting more as would a witness in testifying at a probable cause hearing than as an advocate presenting evidence. *Compare Briscoe v. LaHue,* 460 U.S. 325, 330–34, 103 S.Ct. 1108, 1113–15, 75 L.Ed.2d 96, 104–07 (1983) (witnesses are absolutely immune for their trial testimony). As such, *Burns* provides no support for the proposition that the probation officer is here entitled to prosecutor-like absolute immunity. *See also Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411; *Liffiton v. Keuker,* 850 F.2d 73, 77 (2d Cir.1988) (prosecutor not entitled to absolute immunity in seeking a wiretap warrant).

The court is not persuaded that the function of a probation officer in seeking a Violation of Probation and an arrest warrant from a judge is analogous to that of a prosecutor when presenting evidence against a defendant. Thus, the defendants' analysis on this basis must fail.

### *"Similar Function" Analysis*

■ The functional approach to immunity requires that officials performing identical functions are to be treated alike. *Snell v. Tunnell,* 920 F.2d 673, 690 (10th Cir. 1990), *cert. denied sub nom. Swepston v. Snell,* — U.S. —, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991); *Austin v. Borel,* 830 F.2d 1356, 1362–63 (5th Cir.1987). *See also Burns v. Reed,* — U.S. —, —, 111 S.Ct. 1934, 1949, 114 L.Ed.2d 547, 570 (1991) (Scalia, J., concurring in part and dissenting in part).

■ At first blush, it would seem that a probation officer should be accorded the same treatment as a parole officer since the two types of supervision—probation and parole—are largely identical in the effect on the individual being supervised. *Gagnon v. Scarpelli,* 411 U.S. 778, 781, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656, 661 (1973). However, in the context of the issuance of a Violation of Probation, the role of probation officer is quite different from that of a parole officer: A parole officer in New York is free to formulate the violation of parole containing the allegations of violation of the terms and conditions of parole release; it is he who issues the violation of parole warrant.[3] With a probation violation, it is the judge who actually signs the Violation of Probation and makes the determination to issue the arrest warrant. Thus, in comparing the functions of a parole officer and a probation officer vis-a-vis the decision to violate and issue a warrant,

---

**3.** Parole officers have most often been characterized as acting as do prosecutors in the revocation setting, and thus have been afforded absolute immunity. *Miller v. Garrett,* 695 F.Supp. 740 (S.D.N.Y.1988) (Sprizzo, J.); *Johnson v. Kelsh,* 664 F.Supp. 162 (S.D.N.Y.1987) (Weinfeld, J.). The Second Circuit has not yet ruled on this issue. *See Stewart v. Lattanzi,* 832 F.2d 12 (2d Cir.1987).

they are not analogous, and simply cannot be termed "identical functions."

The court finds, however, that there is a strong analogy in comparing the probation officer's function in this context to that of a police officer seeking an arrest warrant. In both instances the officer presents to a judge a set of facts to which he is swearing and requests that there is a need for an arrest warrant to be issued. Since these functions are nearly identical, it would follow that the probation officer should be entitled to the same level of immunity to which a police officer is entitled in performing that function. The police officer is entitled to only qualified immunity in performing that function. *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271. Thus, the probation officer should be entitled to only qualified immunity when he/she functions in this context. *See also Austin v. Borel*, 830 F.2d 1356 (social workers are entitled to only qualified immunity when preparing petitions for the removal of children).

Thus, for all the reasons set forth, the court finds that the function of the Defendant Wahila, in presenting the violation of probation report and requesting the issuance of an arrest warrant is not: (a) so intimately associated with the judicial process so as to be considered an arm of the court and therefore entitled to absolute immunity, or (b) deemed to be acting as a prosecutor in the manner a prosecutor (or a parole officer) does when he/she decides to charge someone with a violation, thereby being entitled to absolute immunity. The court does find, however, that the function of the defendant in this context is analogous, if not identical, to the function of a police officer when seeking an arrest warrant. Since, under the rule of *Malley*, absolute immunity is not available "for one whose complaint causes a warrant to issue," *Malley v. Briggs*, 475 U.S. at 340, 106 S.Ct. at 1096, the defendant Wahila is not absolutely immune in the case at bar.

The court, having decided that "absolute immunity" is not available to the defendant, must now decide whether the defendant is entitled to summary judgment on the basis of "qualified immunity."

In deciding a motion for summary judgment, the court must determine whether there exists a genuine issue of material fact. See Fed.R.Civ.P. 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 274 (1986); *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Internat'l, Inc.*, 982 F.2d 686, 689, (2d Cir.1993). Furthermore, all ambiguities and inferences must be resolved in favor of the non-moving party— the plaintiff. *Id.* at 690. If the defendant, acting in his official capacity, is to be accorded qualified immunity, he must have acted reasonably. *Harlow v. Fitzgerald*, 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410; *Wyler v. United States*, 725 F.2d 156, 159 (2d Cir.1983). "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official act ... turns on the 'objective reasonableness' of the action ..., assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523, 530 (1987) (*quoting Harlow v. Fitzgerald*, 457 U.S. at 818–19, 102 S.Ct. at 2738, 73 L.Ed.2d at 410–11); *Mozzochi v. Borden*, 959 F.2d 1174, 1177 (2d Cir.1992). As such, the defense of qualified immunity "provides ample support to all but the plainly incompetent or those who knowingly violate the law." *Burns v. Reed*, —— U.S. at ——, 111 S.Ct. at 1944, 114 L.Ed.2d at 564 (*quoting Malley v. Briggs*, 475 U.S. at 341, 106 S.Ct. at 1096, 89 L.Ed.2d at 278).

As the Supreme Court stated in reviewing a police officer's conduct vis-a-vis qualified immunity:

"[A]n officer who knows that objectively unreasonable decisions will be actionable may be motivated to reflect, before submitting a request for a warrant, upon whether he has a reasonable basis for believing that his affidavit establishes probable cause. But such reflection is desirable, because it reduces the likelihood that the officer's request for a warrant will be premature. Premature re-

quests for warrants are at best a waste of judicial resources; at worst, they lead to premature arrests, which may injure the innocent or, by giving the basis for a suppression motion, benefit the guilty." *Malley v. Briggs,* 475 U.S. at 343, 106 S.Ct. at 1097, 89 L.Ed.2d at 278.

The inquiry here is just as it is was for the police officer seeking a warrant in *Malley:* whether the probation officer exercised reasonable professional judgment in applying for the warrant? *See id.* at 346, 106 S.Ct. at 1098, 89 L.Ed.2d at 281.

In order to present a violation of probation to the court, the probation officer must have "reasonable cause" to believe that a term or condition of probation has been violated. *See* N.Y.Crim.Proc.Law §§ 410.-40, 410.50(4), 410.60, 410.70. 9 N.Y.C.R.R. § 352.1(b) provides that

"[t]he term reasonable cause or reasonable cause to believe that a person has violated a condition of probation means the existence of evidence or information which appears to be reliable disclosing facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such condition was violated and that such person violated it."

■ The amicus here, citing *Krause v. Bennett,* 887 F.2d 362, 268–71 (2d Cir. 1989), argues that it is immaterial that a more thorough investigation would have revealed facts in mitigation of the violations here. The argument continues that since the plaintiff had clearly violated her restitution condition, which is a per se violation, *see People v. Ray,* 105 A.D.2d 988, 988, 482 N.Y.S.2d 133, 134 (3d Dep't 1984), then there clearly was "reasonable cause" to justify Officer Wahila's actions. This argument, however, fails for several reasons:

1) The question of whether failure to make restitution payments in this case was a "reasonable basis" for a violation in the plaintiff's circumstances is an open one since unlike in the *Ray* case cited by the amicus, the plaintiff here was not employed even in a low-paying job. *See Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) (incarceration for failure to pay restitution when a probationer is unable to do so is an eighth amendment violation).

2) Given the nature of the supervision here (indirect, by an out-of-county, out-of-state probation officer), it is an open question whether it was reasonable for the defendant to have proceeded as he did without benefit of communication with that out-of-county, out-of-state probation officer. *See* Amicus Memorandum of Law at 5–6.

3) In couching his report to Judge Monserrate as he did—"this writer"—it is an open question whether he was acting as a reasonable probation officer would have.

In view of the foregoing, the court finds that there exists a genuine issue of material fact with respect to the reasonableness of the probation officer's conduct. Since it is necessary to resolve this factual issue before it can be determined whether qualified immunity constitutes a legal defense, *see Cartier v. Lussier,* 955 F.2d 841, 844 (2d Cir.1992), the request for such a finding is at this time denied; that issue will be presented to the trier of fact at the time of trial. *See Finnegan v. Fountain,* 915 F.2d 817, 823–24 (2d Cir.1990); *King v. Macri,* 800 F.Supp. 1157, 1164 (S.D.N.Y.1992).

## CONCLUSIONS

The defendant Wahila, as a probation officer performing the function of presenting a violation of probation report and requesting that a warrant of arrest be issued, is not entitled to absolute immunity. While this defendant may indeed be entitled to the protection of qualified immunity, there remains a genuine issue of material fact as to the reasonableness of his actions in performing that function. Motion for summary judgment is denied. IT IS SO ORDERED.