Vincent MALERBA, Plaintiff,

v.

Donald SELSKY, Dept. Commissioner; Roy Althouse, Asst. Ind. Superintendent, Defendants.

No. 92–CV–998.

United States District Court, N.D. New York.

Jan. 10, 1995.

Vincent Malerba, pro se.

Dennis Vacco, Atty. Gen., State of New York, Sue H.R. Adler, Asst. Atty. Gen., Albany, NY, for defendants.

SCULLIN, District Judge.

### DECISION AND ORDER

Presently before this court is the December 20, 1993, Report and Recommendation of Magistrate Judge David N. Hurd, recommending that defendants' motion to dismiss the complaint be granted in part and further that the motion be converted to one for summary judgment and be granted in part and denied in part. Objections to the Report–Recommendation were submitted by the parties and duly considered by the court. Upon review of the objections and the entire file, this court adopts the Report and Recommendation except for that portion recommending the complaint be dismissed as against Donald Selsky on the basis of absolute immunity.

Magistrate Judge Hurd recommends that the complaint be dismissed as against defendant Donald Selsky (Selsky), citing the prevailing sentiment in this district and others that he is entitled, as a quasi-judicial officer, to absolute immunity. *See e.g., Auburn Inner City Branch N.A.A.C.P. v. Coughlin,* Civil No. 85–CV–922, Memorandum Decision and Order, (N.D.N.Y. Jan. 7, 1994) (*Auburn*); *Parris v. Coughlin,* No. 90–CV–414, 1993 WL 328199 (N.D.N.Y. August 23, 1993); *Dawes v. Selsky,* No. 91–CV–479 (N.D.N.Y. August 30, 1993); *Parkinson v. Employee*

*Assistant, DCF,* 1993 U.S.Dist. LEXIS 4604 (S.D.N.Y. April 7, 1993); *Pacheco v. Kihl,* No. CIV–90–549T (W.D.N.Y. Dec. 17, 1992). This court is disinclined to accept that view in light of our consideration of absolute immunity in *Gelatt v. County of Broome,* 811 F.Supp. 61 (N.D.N.Y.1993), and the recent immunity discussion in *Moye v. Selsky,* 826 F.Supp. 712 (S.D.N.Y.1993), and *Young v. Selsky,* 41 F.3d 47 (2d Cir.1994).

The decisions in this district granting Selsky absolute immunity have (as do most immunity inquiries, *See Burns v. Reed,* 500 U.S. 478, 486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991) and cases cited therein), relied upon a functional analysis of Selsky's position to justify the absolute immunity defense. The analysis generally invokes the factors set forth in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), and restated in *Cleavinger v. Saxner,* 474 U.S. 193, 202, 106 S.Ct. 496, 501, 88 L.Ed.2d 507 (1985). Those factors, in summary form, consist of 1) functional autonomy; 2) procedural safeguards; 3) political autonomy; 4) reliance on precedent; 5) adversarial process; and 6) correctability of error on appeal. *See Gelatt,* 811 F.Supp. at 66, citing *Cleavinger,* 474 U.S. 193, 202, 106 S.Ct. 496, 501; *Butz,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913.

In those cases where Selsky was granted absolute immunity, courts have found that the procedural safeguard factor, as it applies to the underlying procedures afforded at the disciplinary hearing level, justifies absolute immunity for Selsky. *See e.g., Parkinson v. Employee Assistant, DCF,* 1993 U.S.Dist. LEXIS 4604, *7–8 (relying on *Pacheco v. Kihl, (supra)*). However, two recent cases have held that Selsky is not entitled to quasi-judicial absolute immunity in light of the *Cleavinger* factors. The Southern District of New York, in *Moye v. Selsky,* 826 F.Supp. 712 (S.D.N.Y.1993), found that the six factors weighed in favor of qualified, rather than

absolute, immunity for Selsky. Additionally, the Second Circuit, in *Young v. Selsky,* 41 F.3d 47 (2d Cir.1994) applied the *Cleavinger* functional analysis in a factual context similar to the case at bar and held that Selsky was only entitled to qualified immunity. In their decisions, both courts engaged in thorough discussions of how these standards applied to Selsky in his capacity as the sole appellate hearing officer for the New York State Department of Correctional Services (DOCS).

Because absolute immunity should not be extended any further than justified, *Burns,* 500 U.S. at 486, 111 S.Ct. at 1939, (1991), and the burden to justify extension is on the person asserting it, *Buckley v. Fitzsimmons,* — U.S. ——, ——, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993); *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988), this court will evaluate whether the defendant Selsky has sustained his burden in light of the prevailing caselaw applying the *Cleavinger* functional analysis.

## I. FUNCTIONAL AUTONOMY

This component of the functional analysis refers to the need to assure that the individual official can perform his functions without the threat of harassment or intimidation. This court concurs with the findings in *Young* and *Moye* that there is no evidence that Selsky has been subjected to harassment and/or intimidation as a result of the numerous lawsuits brought against him by inmates. While those courts recognized the potential detrimental effects of vexatious litigation by prisoners, both concluded that qualified immunity and proper application of the Federal Rules of Civil Procedure sufficiently shield Selsky from harassment by meritless lawsuits.[1] *Young,* 41 F.3d at 52–53; *Moye,* 826 F.Supp. at 721. This court, therefore, finds that Selsky possesses functional autonomy sufficient for him to perform

---

1. The finding in *Auburn* that the *position* of an officer who has the responsibility "to review countless appeals ... should be free of intimidation by frivolous lawsuits if the review is to be done properly" fails to account for the common practice of this and many courts to *sua sponte* dismiss frivolous lawsuits without ever requiring an answer by the defendants under 28 U.S.C.

§ 1915(d). *Auburn Inner City Branch N.A.A.C.P. v. Coughlin,* Civil No. 85–CV–922, Memorandum Decision and Order at p. 5. As the Supreme Court has noted, many cases are disposed of on the complaint alone or "without the necessity of pretrial discovery proceedings." *Cleavinger,* 474 U.S. at 208, 106 S.Ct. at 504.

his duties free from harassment or intimidation.

## II. PROCEDURAL SAFEGUARDS

In the Second Circuit's decision in *Young,* the court found that Selsky often gave prison staff members advice on the conduct of hearings. The court concluded that, because he often provides assistance in response to both general and specific inquiries from hearing officers, "in certain cases, Selsky may be the only reviewer of rulings that are in essence his own." *Young* 41 F.3d at 53 (citations omitted). Such a procedural framework creates a serious potential for due process violations in a disciplinary review process.

Additionally, Judge Ward in *Moye* found that because there was a lack of "evidentiary rigor" at the hearing, which is not cured by an administrative appeal to Selsky, inequity would result by holding the hearing officer to a higher standard of liability than that imposed on the review officer. *Moye,* 826 F.Supp. at 721–722. The court also found that, notwithstanding the difference in rank, Selsky's function as a reviewer on appeal was sufficiently similar to that of the hearing officer to warrant parity for immunity purposes. Therefore, since prison hearing officers are only entitled to qualified immunity for their official acts, the same should apply to Selsky in his capacity as a reviewing official. *Id.*

Furthermore, Selsky has previously advised the court that he had administratively reviewed over 15,000 Tier III disciplinary determinations between 1988 and 1990. *Dawes v. Selsky,* No. 91–CV–479 (N.D.N.Y. August 13, 1992) (Report–Recommendation of Magistrate Judge DiBianco, p. 5). Assuming that rate has not decreased, Selsky would be obliged to insure constitutional conformity in 625 hearings each month. This court is not convinced, at this juncture, that the resources necessary for such a massive task are in place. Nor are we persuaded that, absent such resources, such a volume is consistent with an "adjudicatory" function, which at the least would require thorough review. While it has been argued that the volume of cases weighs in favor of immunity rather than against it, a system which purports to

offer meaningful review yet is patently incapable of doing so is a compelling reason to subject it to exactly the constitutional scrutiny provided under qualified immunity.

## III. POLITICAL AUTONOMY

This factor concerns the need to insure that the officer is insulated from external influences. It is generally accepted that Selsky is the Commissioner's designee and his decisions are not reviewed by the Commissioner. *Parkinson,* 1993 U.S.Dist. LEXIS 4604, at *14. He performs duties in addition to reviewing appeals, including "lecturing at training programs for hearing officers and visiting facilities for training purposes." (Coughlin Supp.Aff. at 11). "Selsky is also in regular contact with prison staff in connection with ruling on applications for extensions of time to conduct hearings and other matters related to the administration of the disciplinary system." *Parkinson,* 1993 U.S.Dist. LEXIS at *15. Aside from the obvious potential conflict of ruling on appeals where he has been involved in the hearing process, these additional duties do not appear to be the functions of an autonomous judicial officer. This functional interplay comes perilously close to the distinction drawn by the Supreme Court between administrative law judges and "prison officials" who are employees "under obvious pressure to resolve a disciplinary dispute in favor of the institution and their fellow employee." *Cleavinger,* 474 U.S. at 204, 106 S.Ct. at 502.

As was stated in *Moye,* the "fact that Selsky serves at the pleasure of superiors within DOCS creates a dependence upon the goodwill of these officials, who may, on occasion, place institutional interests above the rights of inmates." *Moye* 826 F.Supp. at 723. It is undisputed that Selsky *and* the hearing officers are both employees of the "institution" which is challenged by the appeal, therefore, this court agrees with the finding in both *Moye* and *Young* that he is not "truly independent" for the purposes of this functional analysis. *Moye* 826 F.Supp. at 723.

## IV. PRECEDENT

As the Supreme Court stated in *Butz,* the importance of the use of precedent in resolv-

ing controversies is considered one of "the many checks on malicious actions by judges." 438 U.S. at 512, 98 S.Ct. at 2913. Both Judge Ward, in *Moye*, and Judge Feinberg, in *Young*, found that Selsky serves a "judicial function" as a result of his use of relevant administrative and case law precedent in deciding appeals. It does not appear, however, that Selsky is in any manner bound by precedential disposition from one appeal to the next. Because his decisions are unreviewed by the Commissioner, it is possible that inconsistent or arbitrary applications of precedent could go unnoticed. Thus, this court finds that the importance of the precedent factor, as it fits into the scheme of hearing disposition review, has not been established to the degree necessary to favor absolute immunity.

## V. ADVERSARIAL PROCESS

In order for a quasi-judicial process to be truly adversarial in nature, it must possess some of the traditional features of an actual trial. *See Butz*, 438 U.S. at 512, 98 S.Ct. at 2914. Both the *Moye* court and the *Young* court, have held that "neither the disciplinary hearing nor the administrative appeal is truly adversarial in nature." *Young*, 41 F.3d at 53; *Moye* 826 F.Supp. at 723. The deficiencies in the review process are evidenced by the fact that inmates have no right to counsel and their opportunities to cross-examine witnesses and challenge evidence are limited. There is apparently no opportunity for oral argument, and the inmate is not furnished with the hearing officer's arguments in support of the earlier decision on appeal. *Moye*, 826 F.Supp. at 723. In light of the above, this court agrees with *Moye* and *Selsky* in finding that the appeal process is not adversarial in nature.

## VI. THE CORRECTABILITY OF ERROR ON APPEAL

The final factor to consider under the *Cleavinger* functional analysis is the correctability of error on appeal. In relation to Selsky, this factor refers to the ability of an inmate to have any due process violations, which may occur during his administrative

review, cured by appellate review. As the Second Circuit stated in *Young*,

"[w]e have recently held that purely prospective relief on administrative appeal does not adequately cure a due process violation in a disciplinary hearing if the prisoner has already served part of his disciplinary sentence in the SHU ("Special Housing Unit") pending administrative review ... Similarly, if the administrative appeal officer compounds the violation by unreasonably affirming, a later reversal in state court will be inadequate unless it includes monetary damages."

*Young*, 41 F.3d at 53 (citation omitted). It is clear that, absent the possibility of recovering monetary damages, there is little opportunity for an inmate, such as Malerba, who has already served his time in the SHU, to obtain a cure for any due process violations that may have occurred. As this court stated in *Gelatt*, "[o]ne cannot enjoin that which has already taken place, nor can declaratory relief cure what would then be past injury." *Gelatt v. County of Broome*, 811 F.Supp. at 67. While expeditious review of Selsky's decisions is obtainable through NYCPLR Article 78 proceedings, such proceedings do not provide for the recovery of monetary damages. *Young* 41 F.3d at 53. Therefore, the disciplinary review process fails to provide a sufficient opportunity for an inmate to cure due process violations as is required by the *Cleavinger* functional analysis.

## CONCLUSION

As the *Cleavinger* Court found, "[t]he line between absolute immunity and qualified immunity is not an easy one to perceive and structure." 474 U.S. at 206, 106 S.Ct. at 503. Nonetheless, this court has concluded that the exceptional nature of absolute immunity requires that it not be dispensed in the name of efficiency to those who maintain that they do what a judge would do.

If a director or commissioner of a state agency may insulate him or herself from liability for malicious and intentional acts (for that is what absolute immunity will accomplish) by delegating a decisional review function to an employee, then any agency may be elevated to a judicial level. The roots of

judicial absolute immunity are based in disciplined legal analysis and application by professionals, due deference to the law, and the demands of unquestionable impartiality. This court concludes that Selsky's position, in its present structure, is not so functionally comparable to that of a judicial officer to warrant the expansion of his immunity from qualified to absolute.

Wherefore, based on the December 20, 1993, Report and Recommendation of Magistrate Judge David N. Hurd, the objections thereto, and a review of the file in this matter, it is hereby

ORDERED, that the motion to dismiss the action against defendant Selsky on the basis of absolute quasi-judicial immunity is DENIED, and it is further

ORDERED, that Magistrate Judge Hurd's Report and Recommendation of December 20, 1993, is ADOPTED in all other respects.

SO ORDERED.