Frank S. DORMAN, Plaintiff-Appellant,

v.

Michael HIGGINS, Defendant-Appellee.

No. 912. Docket 85–2326.

United States Court of Appeals, Second Circuit.

Argued March 17, 1987.

Decided June 9, 1987.

Sanford P. Dumain, New York City (Milberg Weiss Bershad Specthrie & Lerach, New York City, on brief), for plaintiff-appellant.

Paula A. Sweeney, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., New York City, Steven E. Obus, Asst. U.S. Atty., New York City, on

brief), for the U.S. of America as amicus-curiae on behalf of defendant-appellee.

Before KEARSE, MINER, and MAHONEY, Circuit Judges.

KEARSE, Circuit Judge.

Plaintiff Frank S. Dorman appeals from a judgment of the United States District Court for the Southern District of New York, Constance Baker Motley, *Chief Judge*, now *Judge*, dismissing his *pro se* complaint, construed as having been brought under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), seeking damages and injunctive relief against defendant Michael Higgins, a United States probation officer, for the preparation of an allegedly false presentence report on Dorman. The court dismissed the complaint on the ground that Higgins was entitled to absolute immunity in connection with the preparation of presentence reports. On appeal, Dorman contends principally that Higgins was entitled at most to a qualified immunity, and that, in any event, immunity principles did not bar injunctive relief. Finding no error in the dismissal, we affirm.

## I. BACKGROUND

In September 1983, Dorman was convicted on one count of mail fraud after a jury trial before the late Henry F. Werker, *Judge*, and was sentenced to five years' imprisonment and a $1,000 fine. On appeal from the judgment of conviction, Dorman's counsel moved pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), to be relieved as appointed counsel on the ground that the record disclosed no nonfrivolous issues for appeal. Dorman submitted a *pro se* brief which argued, *inter alia*, that he had been prejudiced in sentencing by statements in his presentence report that were false. We rejected this contention, stating that it was "completely undermined by Judge Werker's explicit reliance on only Dorman's criminal record and the instant offense as the basis for the sentence imposed." *United States v. Dorman*, No. 83–1369 (Unpub. 1984) [742 F.2d 1442 (table)]. Concluding

that none of Dorman's claims had even colorable merit, we granted counsel's *Anders* motion and affirmed the judgment.

While that appeal was pending, Dorman commenced the present action *pro se*, seeking civil redress for the allegedly false presentence report. The complaint alleged that the false statements that appeared in the report were the result of a conspiracy between Higgins and the prosecuting attorney and of Higgins's failure to make an adequate investigation of the relevant facts. Dorman alleged that the harshness of his criminal sentence was caused by these false statements, and he requested $70,000 in damages and an injunction against any further use of the report. Chief Judge Motley dismissed the complaint sua sponte and without requiring service on Higgins, ruling that a probation officer preparing presentence reports is performing a quasi-judicial function and is therefore entitled to absolute immunity from suit for damages for their improper preparation.

This appeal followed.

## II. DISCUSSION

On appeal Dorman contends principally that Higgins was not entitled to more than qualified immunity and that neither qualified nor absolute immunity would bar Dorman's request for injunctive relief. For the reasons below, we conclude that the complaint was properly dismissed because principles of collateral estoppel bar at least part of Dorman's claim for damages, Higgins has absolute immunity from the entire claim for damages, and the complaint did not indicate that Dorman was entitled to any injunctive relief.

### A. *Collateral Estoppel*

■ The complaint alleges that Dorman was injured by the allegedly false statements in the presentence report because he received a more severe sentence than would have been imposed had the report been accurate. This claim, however, is barred by principles of collateral estoppel since this Court ruled, in affirming Dor-

man's conviction and rejecting his sentencing claim, that the district court did not in fact rely on the presentence report as a basis for the sentence imposed. *See United States v. Podell,* 572 F.2d 31, 35 (2d Cir.1978) (fact put in issue and determined against defendant in criminal proceeding cannot be relitigated by him in subsequent suit); *Gelb v. Royal Globe Insurance Company,* 798 F.2d 38, 43 (2d Cir.1986) (party other than government may assert collateral estoppel against convicted defendant with respect to fact necessarily determined in criminal proceeding), *cert. denied,* —— U.S. ——, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987).

■ It is not clear, however, that collateral estoppel bars Dorman's entire claim for damages, since, reading the complaint reasonably broadly, *see Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1987), especially in light of its request for an injunction against further use of the presentence report, Dorman might well have attempted to prove that the report was put to some additional use that caused him injury. *See, e.g., United States v. Charmer Industries,* 711 F.2d 1164, 1170 (2d Cir.1983) (*"Charmer"*) (though presentence report is used primarily for sentencing, it may also be used by, *e.g.,* parole officials in making decisions as to whether defendant should be released from prison early). Since our affirmance of Dorman's conviction did not involve these other potential uses of the presentence report, Dorman is not collaterally estopped from showing that the allegedly false statements in the report injured him in ways other than causing an increase in the severity of his sentence.

Accordingly, we turn to the question of whether the damage claim was barred by Higgins's entitlement to absolute immunity.

### B. *Absolute Immunity for Federal Probation Officers*

■ The entitlement of a government official to absolute immunity, protecting him from liability, from suit, and from any scrutiny of the motive for and reasonableness of his official actions, depends on the function he performs. Absolute immunity is rarely granted; qualified immunity is the norm. *See, e.g., Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). Functions most apt to be accorded absolute, rather than qualified, immunity are those integrally related to the judicial process. Two types of factors inform such a decision: the need for absolute immunity in order to permit the effective performance of the function, and the existence of safeguards against improper performance.

■ Many functions intimately connected with the judicial process are characterized by a high degree of discretion in the decisions to be made, *e.g.,* whom to prosecute, what evidence to present, what penalties to seek, what rulings to make on disputed issues, and what sanctions to impose. In such an adversary environment, emotions are likely to run high, and the party against whom any of these decisions is made is likely to feel aggrieved; further litigation would often ensue, if allowed. *See Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978); *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967). Absolute immunity in the performance of these functions is needed in order that the official not, out of fear of exposure to a civil suit for damages, be intimidated in the exercise of his discretion and the proper performance of his duties. *See, e.g., id.; Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986).

The safeguards surrounding the performance of functions closely connected with the judicial process minimize the risks that unreasonable official action will occur or, if it occurs, go uncorrected. These safeguards include the apolitical nature of judicial decisions, the role of precedent in shaping judicial decisions, the adversary nature of the process, which increases the likelihood that any significant defect will be noted and called to the impartial decisionmaker's attention, and the regularized

availability of review in another forum. *See, e.g., Butz v. Economou,* 438 U.S. at 512, 98 S.Ct. at 2913; *Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 501, 88 L.Ed.2d 507 (1985).

■ In light of these considerations, judges performing judicial functions within their jurisdictions are granted absolute immunity. *See, e.g., Pierson v. Ray,* 386 U.S. at 553–55, 87 S.Ct. at 1217–18. In addition, some officials who are not judges but who "perform functions closely associated with the judicial process," *Cleavinger v. Saxner,* 106 S.Ct. at 500–01, have also been accorded such immunity. These include hearing examiners employed by administrative agencies, *see Butz v. Economou,* 438 U.S. at 513–17, 98 S.Ct. at 2914–16, attorneys in the course of activities "intimately associated with the judicial phase of the judicial process," *e.g., Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976), and witnesses who testify in judicial proceedings, *see Briscoe v. LaHue,* 460 U.S. 325, 330–34, 103 S.Ct. 1108, 1112–13, 75 L.Ed.2d 96 (1983).

■ We conclude that federal probation officers preparing and furnishing presentence reports to the court should be added to this list. Federal probation officers are appointed by the district court, 18 U.S.C. § 3654 (1982) (repealed effective Nov. 1, 1987, Pub.L. 98–473, tit. II, §§ 212(a)(2), 235(a)(1), 98 Stat. 1987, 2031 (1984), as amended, and reenacted in part as 18 U.S.C. § 3602 effective Nov. 1, 1987, by the same legislation), and are subject to removal by that court in its discretion, 18 U.S.C. § 3654. Presentence reports are normally an important part of a federal court proceeding in which a defendant has been found guilty of an offense and is to be punished for his crime, *see* Fed.R.Crim.P. 32(c); Administrative Office of the United States Courts, *The Presentence Investigation Report* (1978) ("AO *Presentence Report Monograph* "), at 1. The probation officer prepares the report at the instance of the court. Although a secondary use of the report is to provide information to the United States Parole Commission and the Bureau of Prisons for use in their release

and confinement decisions, the presentence report is a court document and may not be disclosed to others without the permission of the court. *See, e.g., Charmer,* 711 F.2d at 1170–71. Thus, it is clear that, in preparing presentence reports, a federal probation officer acts as an arm of the court and that that task is an integral part of one of the most critical phases of the judicial process.

As the principal purpose of the presentence report is to provide the court with information facilitating the meaningful exercise of its sentencing discretion, "[i]n order to be of greatest assistance to the court, the report should be as complete as possible, containing '[a]ll objective information which is significant to the decisionmaking process.' " *Id.* at 1170 (quoting AO *Presentence Report Monograph* at 1). There are no formal limitations on the report's contents. It may include hearsay, and it normally will include information from a variety of sources, including the defendant himself, members of his family, cooperating public and private welfare agencies, law enforcement agencies, employers, psychologists, and others who know the defendant. Further, it may contain information from sources whose identities are not therein disclosed, as, for example, "[l]aw enforcement agencies frequently wish to protect the sources of information in their records and will sometimes exact a promise of confidentiality from the probation officer." *Charmer,* 711 F.2d at 1171.

Though the report is to be "as complete as possible," it is obvious that the probation officer cannot include every word that is said to him; some discretion must be exercised in his decision of what to report to the court. *See* AO *Presentence Report Monograph* at 4 ("it is the ability to select the pertinent data, to separate fact and inference, to draw out the subjective elements and to assess their relative importance that distinguishes the trained and skilled probation officer"). Nonetheless, the goal of a complete compendium of all significant objective information means that the probation officer should not filter

out any statements that are relevant. He is expected to report accurately the pertinent statements of such sources as codefendants, witnesses, complainants, and victims, *id.* at 9; he must include any pertinent statements of the defendant's "spouse, or cohabiting partner, if any," though "[s]uch a person ... can be a biased source either against or in protection of the defendant," *id.* at 13. The requirement of accurate reporting thus may result in the inclusion in the report of statements that are themselves inaccurate. Though verification of the information collected is desirable, verification simply is not always possible. *See, e.g., id.* at 5, 13 (unverified information should be clearly labeled).

In all the circumstances, and especially given the propensity of prisoners to file lawsuits challenging all aspects of the proceedings against them, we perceive a need for the probation officer to have absolute immunity from a civil suit for damages. If these officers were "held personally liable in damages as guarantors of the quality of their evidence, they might hesitate to bring forward" some of the information they have collected " 'because it is very difficult if not impossible' " for the officers " 'to be absolutely certain of the objective truth or falsity,' " of the statements made to them. *See Butz v. Economou,* 438 U.S. at 517, 98 S.Ct. at 2916 (discussing immunity needs of attorneys litigating on behalf of administrative agencies, quoting *Imbler v. Pachtman,* 424 U.S. at 440, 96 S.Ct. at 999 (White, J., concurring in judgment)).

We see little danger in according federal probation officers absolute immunity for this function, for the presentence report is subject to a number of procedural safeguards designed to protect the defendant's constitutional right not to be sentenced on the basis of information that is materially false, *see Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *Charmer,* 711 F.2d at 1171. First, the defendant and his counsel must be given an opportunity to review the report. *See* Fed. R.Crim.P. 32(c)(3)(A). If the defendant alleges that the report is factually inaccurate in any respect, the sentencing court may not take the controverted part of the report

into account in imposing sentence unless it has found that the government has established by a preponderance of the evidence, *see United States v. Lee,* 818 F.2d 1052, (2d Cir.1987), that the controverted statements are accurate. *See* Fed.R.Crim.P. 32(c)(3)(D). The court's finding, in writing, is then attached to the report. *Id.* Further, any determination by the sentencing court as to the accuracy of a controverted part of the presentencing report is subject to review on appeal to the circuit court. Thus, in sentencing, the presentence report prepared by the probation officer is subject to adversary scrutiny and at least two layers of judicial review.

Even use of the report by the Parole Commission is subject to safeguards that allow the defendant to test its accuracy. These include a hearing at which the defendant would have the opportunity to appear and testify in his own behalf with respect to the allegedly inaccurate statements, *see, e.g., Ochoa v. United States,* 819 F.2d 366, 368 (2d Cir.1987), and the availability of a habeas corpus proceeding to challenge any allegedly unconstitutional use of the report, *see, e.g., Kramer v. Jenkins,* 803 F.2d 896, 900–01 (7th Cir. 1986).

In all the circumstances, we think it clear that the nature of the function performed, the impossibility of guaranteeing the accuracy of the information to be reported, and the routine subjection of the presentence report to adversary review and thence to judicial scrutiny make it appropriate for federal probation officers to be accorded absolute immunity in connection with their preparation and presentation of presentence reports. Our conclusion is in accord with those of the Fifth and Tenth Circuits in *Spaulding v. Nielsen,* 599 F.2d 728, 729 (5th Cir.1979) (per curiam), and *Tripati v. United States Immigration and Naturalization Service,* 784 F.2d 345, 348 (10th Cir.1986) (per curiam), and with the similar conclusions of other circuits with respect to state probation officers operating within similar frameworks, *e.g., Demoran v. Witt,* 781 F.2d 155, 157–58 (9th Cir.1985);

*Hughes v. Chesser*, 731 F.2d 1489, 1490 (11th Cir.1984).

 Dorman's allegation that Higgins prepared the allegedly false report in conspiracy with the prosecutor is insufficient to forestall dismissal of his damage claims. First, the allegation is conclusory and hence could not save the complaint even if Higgins had no immunity. *E.g., Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977) (per curiam). More fundamentally, since absolute immunity spares the official any scrutiny of his motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity. *See, e.g., Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980) (claim that judge conspired to corrupt his office was properly dismissed on grounds of absolute immunity) (dictum); *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir.1986) (en banc); *Holloway v. Walker*, 765 F.2d 517, 522–23 (5th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 605, 88 L.Ed.2d 583 (1985).

In sum, to the extent that the complaint requested damages, the district court properly dismissed it on the ground that Higgins was entitled to absolute immunity.

C. *The Request for Injunctive Relief*

 In addition to his claim for money damages, Dorman requested that the court grant an injunction against "any use and or further use" of the presentence report. Although Dorman correctly contends that an official's entitlement to absolute immunity from a claim for damages does not bar the granting of injunctive relief, *see, e.g., Pulliam v. Allen*, 466 U.S. 522, 536–37, 104 S.Ct. 1970, 1977–78, 80 L.Ed.2d 565 (1984); *Heimbach v. Village of Lyons*, 597 F.2d 344, 347 (2d Cir.1979) (per curiam), it is clear that the district court properly dismissed Dorman's claim for injunctive relief.

First, the only defendant named in this action is Higgins. The presentence report is used principally by the court in sentencing and by the Parole Commission and the Bureau of Prisons. The report may also be used by a defendant's probation officer after the defendant is released from prison. *See* AO *Presentence Report Monograph* at 1. There is no allegation that Dorman's probation officer is or will be Higgins, or that there is to be any use of the report by Higgins. Accordingly, no injunctive relief against Higgins was warranted.

Further, the complaint gives no indication that there is any likely use of the report from which Dorman is in imminent danger of harm. The complaint thus does not indicate that Dorman would be entitled to injunctive relief against anyone.

### CONCLUSION

The judgment of the district court dismissing the complaint is in all respects affirmed.