Irwin SCHIFF, Plaintiff,

v.

Peter C. DORSEY, Peter S. Jongbloed, Carmelo Medina, Robert Netcoh, Defendants.

No. 3:94–CV–166 (JAC).

United States District Court, D. Connecticut.

Dec. 30, 1994.

74

Irwin Schiff, pro se.

Carl J. Schuman, Asst. U.S. Atty., D. Conn., Hartford, CT, for defendants.

### RULING ON DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, Circuit Judge *:

Plaintiff Irwin Schiff brings this action against United States District Judge Peter C. Dorsey (now Chief Judge of the District of Connecticut), Assistant United States Attorney Peter J. Jongbloed, United States Probation Officer Carmelo Medina, and Internal Revenue Service Agent Robert Netcoh, in their individual capacities, for money damages. Plaintiff complains that the four defendants acted improperly with regard to the revocation of his probation. Defendants now move for dismissal of the action, or alternatively for summary judgment. Because this Court concludes that all four defendants are cloaked in either qualified or absolute immunity, their motion for summary judgment is granted.

### I. BACKGROUND

Plaintiff was convicted in 1985 of three counts of attempted tax evasion and one count of failure to file a return. *See United States v. Schiff,* 876 F.2d 272, 273–74 (2d Cir.1989); *United States v. Schiff,* 801 F.2d 108, 109 (2d Cir.1986), *cert. denied,* 480 U.S. 945, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987);

---

* Of the United States Court of Appeals for the    Second Circuit, sitting by designation.

*see also Schiff v. United States,* 919 F.2d 830, 831 (2d Cir.1990) (compiling Schiff's cases), *cert. denied,* 501 U.S. 1238, 111 S.Ct. 2871, 115 L.Ed.2d 1037 (1991). The district court sentenced plaintiff to three years of incarceration to be followed by three years of probation, plus a fine of $30,000. One of the special conditions of probation was that the plaintiff "shall remain current insofar as all legally required tax payments with reasonable and good faith compliance and shall file all returns required by tax laws." *See* Defs.' Ex. 1, at 2 (Judgment and Commitment Order). On April 23, 1991, USPO Medina filed a Petition for Probation Action in the United States District Court for the District of Connecticut, seeking revocation of the plaintiff's probation due to his violation of this special condition. *See* Defs.' Ex. 2 (Petition for Probation Action). On November 26, 1991, Judge Dorsey found the plaintiff to have violated this condition of probation and returned him to custody for an additional two years. *See* Defs.' Ex. 3 (Order re Petition for Probation Action).

## II. DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S.*

*Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986) (Feinberg, C.J.), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Finally, " 'mere conclusory allegations or denials' " in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)).

Summary judgment is properly granted in favor of a government official sued in his individual capacity when, given the undisputed facts, that official satisfies the requirements for absolute or qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982). Whereas officials cloaked in absolute immunity are automatically protected against all suits for monetary damages, officials who are entitled to qualified immunity are amenable to suit only when they violate a "clearly established statutory or constitutional right of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738.

### B. *Judge Dorsey*

The complaint alleges primarily that Judge Dorsey conducted the plaintiff's probation revocation hearing improperly, improperly denied plaintiff the assistance of counsel, failed to recuse himself from presiding over the hearing, and made numerous errors in finding the plaintiff in violation of probation. *See* Compl. at 3–6. Defendant replies that these claims are barred by absolute judicial immunity.

The Supreme Court has held that "generally, a judge is immune from a suit for money damages," with two exceptions: (1) when the suit stems from actions not taken in the judge's judicial capacity, and (2) when the suit stems from judicial actions taken in the complete absence of jurisdiction. *Mi-*

*reles v. Waco,* 502 U.S. 9, 11–12, 112 S.Ct. 286, 287–88, 116 L.Ed.2d 9 (1991); *Polur v. Raffe,* 912 F.2d 52 (2d Cir.), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1990). The first exception to judicial immunity does not apply here because plaintiff's claims are based on actions taken by Judge Dorsey in the course of probation revocation proceedings in a United States District Court—for example, ruling on a motion for appointment of counsel, and determining whether plaintiff violated the conditions of his probation. Such actions clearly fall within a judge's "judicial capacity." Neither does the second exception to absolute judicial immunity apply in this case, because the district court clearly had jurisdiction over plaintiff's probation revocation hearing, 18 U.S.C. § 3565; FED.R.CRIM.P. 32.1. Accordingly, absolute judicial immunity bars plaintiff's claims, and summary judgment is therefore granted in favor of Judge Dorsey.

■ Plaintiff also seems to allege, in speculative and conclusory fashion, that Judge Dorsey must have instructed USPO Medina to seek the revocation of plaintiff's probation, and accordingly "was guilty of subornation of perjury." Compl. at 2, ¶ 4. Because civil rights complaints are "plainly insufficient unless they contain some specific allegations of fact indicating a deprivation of civil rights, rather than state simple conclusions," *Koch v. Yunich,* 533 F.2d 80, 85 (2d Cir.1975), these allegations fail to state a claim upon which relief can be granted. Accordingly, to the extent that plaintiff claims that his rights were violated by alleged subornation of perjury by the district judge, that claim is dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

It should be noted that even if plaintiff's allegations of conspiracy among the various defendants were more than conclusory, his claims against Judge Dorsey would nevertheless be barred by the doctrine of absolute immunity. *Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir.1987) ("[A]n allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity.").

## C. United States Probation Officer Medina

Plaintiff claims that defendant Medina filed a Petition for Probation Action despite his belief that plaintiff had not violated the conditions of his probation. Compl. at 2, ¶¶ 3–4. Specifically, plaintiff claims that because he had never spoken to Officer Medina before preparing the Petition, Medina's statement that the probation action was based on plaintiff's "conduct and attitude" must have been perjurious, and must have been made at the direction of Judge Dorsey. Compl. at 2, ¶ 3. Defendant Medina argues that these claims are barred by absolute or qualified immunity.

The Supreme Court has laid down certain basic principles guiding a court's decision to grant absolute or qualified immunity to a particular public official. First, "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed,* 500 U.S. 478, 486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991). "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Id.*

■ Whether government officials enjoy absolute or qualified immunity depends not on "their particular location within the Government" but rather "the special nature of their responsibilities." *Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978). The Supreme Court has stated that government officials are absolutely immune from damages actions when they perform "functions closely associated with the judicial process." *Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985). The rationale for this rule is that the manifold safeguards surrounding the judicial process "minimize the risks that unreasonable official action will occur, or, if it occurs, go uncorrected." *Dorman v. Higgins,* 821 F.2d 133, 136 (2d Cir. 1987). Among these safeguards are

the apolitical nature of judicial decisions, the role of precedent in shaping judicial decisions, the adversary nature of the pro-

cess, which increases the likelihood that any significant defect will be noted and called to the impartial decisionmaker's attention, and the regularized availability of review in another forum.

*Id.* at 136–37 (citing *Butz,* 438 U.S. at 512, 98 S.Ct. at 2913–14, and *Cleavinger,* 474 U.S. at 202, 106 S.Ct. at 501). Among the officials who have been accorded absolute immunity for their intimate role in the judicial process include not only judges, *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), but also hearing examiners within the executive branch, *Butz v. Economou,* 438 U.S. at 514, 98 S.Ct. at 2914–15, prosecutors who initiate a criminal proceeding and present the state's case, *Imbler v. Pachtman,* 424 U.S. 409, 424–26, 96 S.Ct. 984, 992–93, 47 L.Ed.2d 128 (1976), witnesses who testify in judicial proceedings, *Briscoe v. LaHue,* 460 U.S. 325, 335, 103 S.Ct. 1108, 1115–16, 75 L.Ed.2d 96 (1983), grand jurors, *see Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985), judicial law clerks, *Oliva v. Heller,* 839 F.2d 37, 40 (2d Cir.1988), and state parole officials, *see, e.g., Sellars v. Procunier,* 641 F.2d 1295, 1303 (9th Cir.), *cert. denied,* 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981) (cited in *Cleavinger,* 474 U.S. at 201, 106 S.Ct. at 500–01).

When faced with suits against probation officers, federal courts have uniformly held that the preparation of presentence reports is such an integral part of the judicial process that it warrants the protection of absolute immunity. *Dorman,* 821 F.2d at 137–38 (federal probation officer); *Demoran v. Witt,* 781 F.2d 155 (9th Cir.1986) (state probation officer); *Tripati v. INS,* 784 F.2d 345 (10th Cir.1986) (per curiam) (federal probation officer); *Hughes v. Chesser,* 731 F.2d 1489 (11th Cir.1984) (state probation officer); *Spaulding v. Nielsen,* 599 F.2d 728 (5th Cir.1979) (federal probation officer); *Burkes v. Callion,* 433 F.2d 318 (9th Cir.1970) (federal probation officer), *cert. denied,* 403 U.S. 908, 91 S.Ct. 2217, 29 L.Ed.2d 685 (1971); *Shelton v. McCarthy,* 699 F.Supp. 412 (W.D.N.Y. 1988) (state probation officer). As those courts have explained, probation officers act "as an arm of the court" when furnishing a court with enough information to meaningfully exercise its sentencing discretion.[1] *See, e.g., Dorman,* 821 F.2d at 137. Indeed, the sentencing judge's need for complete and accurate information about an offender requires that he enjoy a relationship of the utmost trust and confidentiality with the federal probation officer. In order to assure candor in this relationship, probation officers must not be subject to harassing and vexatious litigation brought by convicted offenders who are predictably unhappy about their sentences.

After first acknowledging the need for some type of immunity for probation officers who prepare presentence reports, courts have then examined whether the various safeguards surrounding that presentence process justify absolute immunity. Several factors are relevant. First, probation officers are insulated from the political influences of the legislative and executive branches because they are appointed and removed by the district court. 18 U.S.C. § 3602 (1988); *see Dorman,* 821 F.2d at 137. While it is true that most personnel matters are handled internally by the probation office, all hiring and firing decisions must ultimately be approved by the district court. Second, probation officers prepare presentence reports at the request of the court; these reports are confidential documents that may not be disclosed to others without the permission of the court. *Id.* Third, the defendant and his counsel must be given the opportunity to review the report and to contest any factual inaccuracy in the report. Disputed portions of the report may be taken into consideration for sentencing purposes only after written factual findings by the judge. FED.R.CRIM.P. 32(c)(3). Those findings, in turn, are subject to appellate review. *Dorman,* 821 F.2d at 138. All of these safeguards reduce the likelihood of official misconduct that might lead to the erroneous deprivation of rights. For these reasons, probation officers have been

---

1. As one thoughtful commentator has described this historical relationship: "The sentencing judge saw the probation officer as the court's 'eyes and ears,' a neutral information gatherer with loyalties to no one but the court." Sharon Bunzel, Note, *The Probation Officer and the Federal Sentencing Guidelines: Strange Philosophical Bedfellows,* 104 YALE L.J. 933, 945 (1995).

afforded absolute immunity with regard to the preparation of presentence reports.

█ Many of these reasons similarly warrant absolute immunity for probation officers with regard to the initiation of probation revocation hearings. As the defendant here points out, "[p]reparing a petition for probation action is closely associated with the judicial process because it seeks to enforce the court's own sentence of probation." Defs.' Mem. of Law in Supp. of Mot. to Dismiss and/or for Summ.J. at 5. The federal probation officer serves as the court's eyes and ears not only during the presentencing phase, but also while the offender is serving his sentence of probation. The district judge must rely on the frank, unfiltered reports of the probation officer in order to monitor the offender's compliance with the court's own orders.

The Second Circuit has not yet determined whether a probation officer enjoys absolute immunity for other functions besides preparing presentence reports, but a few courts have concluded that probation officers should be accorded only qualified immunity for their roles in petitioning for probation revocation. *Ray v. Pickett*, 734 F.2d 370 (8th Cir.1984) (federal probation officer); *Galvan v. Garmon*, 710 F.2d 214 (5th Cir.1983) (per curiam) (state probation officer); *Gelatt v. County of Broome*, 811 F.Supp. 61 (N.D.N.Y. 1993) (state probation officer). In each of these cases, the function of the probation officer has been likened to that of a police officer seeking an arrest warrant.

Although there are certainly some parallels between police officers and federal probation officers, such an analogy overlooks the unique ongoing relationship between a federal probation officer and a sentencing judge. A federal probation officer is required to monitor an offender's "conduct and condition," and to relay this information regularly to the sentencing judge, 18 U.S.C. § 3603(b) (1988), regardless of whether the probationer is fully complying with his conditions of probation. Undoubtedly, this reporting duty entails just as much frankness and confidentiality between probation officers and the sentencing judge during the post-sentencing phase as during the pre-sentencing phase.

The filing of a petition for probation revocation is simply one formalized communication within the ongoing relationship between the federal probation officer and the district judge—an ongoing relationship that simply does not exist between a judge and a prosecutor (who does enjoy absolute immunity), much less between a judge and a police officer. Though it is easy to focus only on that definitive event of filing to determine the appropriate level of immunity, that approach fails to recognize the context in which that single event occurs.

In the present case, plaintiff's highly speculative allegations about a "conspiracy" between Judge Dorsey and USPO Medina takes aim precisely at this confidential relationship between district judges and federal probation officers—and suggests why absolute immunity is appropriate for probation officers who initiate and prosecute probation violation petitions. Indeed, plaintiff goes so far as to allege that USPO Medina filed the petition for probation revocation at the direction of Judge Dorsey. However, to the extent that the complaint challenges the decision of a federal probation officer to seek a probation revocation hearing—a decision that is made in the context of the probation officer's statutory duty to consult with the district judge—such claims threaten the court's ability to monitor compliance with its own orders.

█ As in the presentence report context, there are numerous safeguards built into the probation revocation process that protect against the erroneous deprivation of a probationer's rights by a flawed petition for probation action. As pointed out earlier, probation officers are insulated from political influences because they serve at the discretion of the district court. Even more importantly, however, when a federal probation officer files a petition for probation revocation, that petition does nothing but initiate regularized judicial procedures which may or may not result in probation revocation. Indeed, the petition does not even prompt a probation revocation hearing unless the district judge

issues an order to show cause.[2] That order, in turn, merely triggers a revocation hearing under Rule 32.1 of the Federal Rules of Criminal Procedure.[3] At this hearing, the probationer must be afforded the opportunity to contest allegations that he has violated the terms of his probation, to produce witnesses who will offer relevant testimony, to cross-examine adverse witnesses and to be represented by an attorney. FED.R.CRIM.P. 32.1; 18 U.S.C. § 3006A (granting right to representation by counsel when charged with violation of probation). Such adversarial proceedings are designed to protect against the erroneous deprivations of a probationer's rights. Furthermore, a probationer is entitled to appeal from revocation of his probation. *See, e.g., United States v. Brown,* 899 F.2d 189 (2d Cir.1990) (reviewing revocation of probation).

In short, the probation officer's filing of a petition for probation action merely sets into motion a complex adversarial process presided over by a neutral, independent decision-maker, with safeguards that are just as extensive as in the presentence context. Indeed, in the present case, neither the filing of the petition nor the subsequent order to show cause deprived the plaintiff of his liberty. The defendant was afforded no fewer than four days of hearings over a seven-month period, all of which he attended, and at three of which he presented testimony on his own behalf.[4] Only after the plaintiff was given the full benefit of due process did the court determine that he had violated the conditions of his probation, and therefore ordered him incarcerated. These protections against the erroneous deprivation of rights, coupled with the need to preserve the ability of the federal probation officer to communicate frankly and completely with the sentencing judge, indicate that USPO Medina should be protected by absolute immunity against plaintiff's claims.

Finally, Officer Medina should be cloaked in absolute immunity because his function in presenting the case for probation revocation closely resembles the role of a prosecutor. Although the United States probation officers do confer with the United States Attorney's office, federal probation officers have long been primarily responsible for presenting the case against a probationer in the sentencing court. Indeed, in the District of Connecticut, federal probation officers historically appeared at the revocation hearing without an AUSA. Since the 1980s, at the request of the Judges of the District Court, an AUSA has accompanied the probation officer on a "stand-by" basis—in the event the court, the defendant, or the probation officer raises a question of special relevance to the government or the probation officer himself must testify; in the latter circumstance, the USPO will be less able to manage the presentation of evidence against the probationer. The probation officer, who is absolutely immune for his testimonial function, *see Briscoe v. LaHue,* 460 U.S. 325, 335, 103 S.Ct. 1108, 1115–16, 75 L.Ed.2d 96 (1983) (absolutely immunizing witnesses at judicial proceedings), should also be absolutely immune for his prosecutorial function. *See Imbler v. Pachtman,* 424 U.S. 409, 424–26, 96 S.Ct. 984, 992–93, 47 L.Ed.2d 128 (1976) (absolutely immunizing prosecutor who initiates criminal proceeding and presents the state's

2. We need not consider here whether absolute immunity is available when a probation officer seeks an arrest warrant in the course of probation revocation proceedings. Because Officer Medina did not exercise his statutory authority to arrest the plaintiff, or to seek a warrant for his arrest, 18 U.S.C. § 3606, plaintiff Schiff was never in any danger of being incarcerated at the behest of the probation officer. While much of the reasoning in this opinion would certainly apply to that situation, at least one court has held that under those circumstances, the probation officer enjoys only qualified immunity. *Gelatt v. County of Broome,* 811 F.Supp. 61 (N.D.N.Y. 1993) (state probation officer).

3. Under Fed.R.Crim.P. 32.1(a)(1), a probationer who is taken into custody for an alleged violation is also entitled to a preliminary hearing to determine whether there is probable cause to conclude that he has violated the conditions of his probation. In the case presently before the court, the plaintiff was afforded such a hearing despite the fact that he was not in custody at the time, and thus was not statutorily entitled to an extra hearing.

4. Probation Violation Hearing held May 31, 1991; Probation Violation Hearing held July 31, 1991; Continued Probation Violation Hearing held August 1, 1991; Continued Probation Violation Hearing held November 25, 1991.

case); *see also Harris v. Menendez,* 817 F.2d 737 (11th Cir.1987) (holding that state attorney is absolutely immune from civil rights claims based on participation in plaintiff's parole revocation).

Accordingly, the Court holds that a federal probation officer is absolutely immune from a private suit for money damages predicated on a claim that he filed a groundless petition for probation revocation.

■■■■■ It is worth noting that even if USPO Medina were not cloaked in absolute immunity, plaintiff's claims would nevertheless be barred by qualified immunity. *See Griffin v. Leonard,* 821 F.2d 1124 (5th Cir. 1987) (stating that the court need not decide whether federal probation officer is entitled to absolute immunity for initiating parole revocation hearing, since officer would be protected by qualified immunity); *see also Galvan v. Garmon,* 710 F.2d 214 (5th Cir. 1983), *cert. denied,* 466 U.S. 949, 104 S.Ct. 2150, 80 L.Ed.2d 536 (1984) (granting only qualified immunity to state probation officer who initiated probation revocation proceedings); *Gelatt v. County of Broome,* 811 F.Supp. 61 (N.D.N.Y.1993) (same). Qualified immunity protects government officials when their performance of a discretionary function does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. at 2738. The test laid forth in *Harlow* focuses on the "objective reasonableness of an official's conduct," *id.,* not on the official's subjective good faith. "[B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Id.* at 817–18, 102 S.Ct. at 2738. The fact that the district court entered a final judgment that the plaintiff violated his probation establishes, as a matter of law, that defendant Medina did not violate any clearly established statutory or constitutional provisions in petitioning the court to take that very action. *See Cameron v. Fogarty,* 806 F.2d 380, 386–89 (2d Cir. 1986) (holding that conviction is an absolute defense to § 1983 action against officer for false arrest or malicious prosecution), *cert.*

*denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987).

Because Officer Medina is protected by—at a minimum—qualified immunity with regard to the present claims, summary judgment must be granted in his favor.

### D. Assistant United States Attorney Jongbloed

The complaint next alleges that AUSA Jongbloed knew of Judge Dorsey's purported violations of plaintiff's rights and nonetheless still pressed for the revocation of plaintiff's probation. *See* Compl. at 6–7, ¶ 4. Jongbloed responds that he is absolutely immune from suit in his capacity as a prosecutor.

■■■ It is well-established that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler v. Pachtman,* 424 U.S. at 431, 96 S.Ct. at 995. All of defendant Jongbloed's actions fall squarely within the ambit of prosecutorial activity covered by absolute immunity. *See, e.g., Harris v. Menendez,* 817 F.2d at 741. Accordingly, summary judgment is granted in favor of defendant Jongbloed.

### E. Internal Revenue Service Agent Netcoh

The complaint alleges that Agent Netcoh improperly urged the probation office to seek revocation of the plaintiff's probation. *See* Compl. at 2, ¶ 2.

■■■■ A law enforcement officer seeking an arrest warrant is entitled to qualified immunity. *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Because Agent Netcoh's alleged actions in seeking to initiate probation revocation proceedings by reporting plaintiffs' illegal activities are functionally identifiable as protected actions of a law enforcement agent, Agent Netcoh is similarly immune from suit. *See Harlow v. Fitzgerald,* 457 U.S. at 810–12, 102 S.Ct. at 2734–35 (espousing functional approach to immunity law). As in the case of USPO Medina, the district court's final judgment that the plaintiff indeed violated his probation establishes as a matter of law that Agent Netcoh did not violate any clearly established statutory or constitutional rights

in recommending that the probation office seek revocation of plaintiff's probation. Inasmuch as he is immune from the present suit, summary judgment is granted in favor of Agent Netcoh.

### III. CONCLUSION

Because all of the defendants are shielded from the plaintiff's claims by absolute or qualified immunity, the defendants' Motion to Dismiss and/or for Summary Judgment (doc. # 4) (filed March 10, 1994) is hereby GRANTED. Summary judgment shall enter in favor of all defendants.[5]

It is so ordered.

---

5. Because the court sustains the defendants' affirmative defenses of absolute and qualified immunity, there is no need to reach their other defenses.