Dr. Allan L. GANT, Plaintiff,

v.

UNITED STATES PROBATION
OFFICE, et al., Defendants.

No. CIV.A. 5:97–0335.

United States District Court,
S.D. West Virginia.

Feb. 13, 1998.

Allan L. Gant, Richmond, WV, pro se.

Stephen M. Horn, Asst. U.S. Atty., Rebecca A. Betts, U.S. Atty., Charleston, WV, for Defendants.

## MEMORANDUM OPINION

FABER, District Judge.

Pending before the court is defendants' motion to dismiss. Plaintiff, Dr. Allan Gant ("Gant"), filed this action against his probation officer, Kenneth Sales ("Sales"); Sales' supervisors, Dr. Sam Samples ("Samples") and Davis Lewis ("Lewis"); and the United States Probation Office for the Southern District of West Virginia. Gant alleges that defendants superseded their authority in unilaterally altering the conditions of his supervised release and petitioning the court for a revocation hearing. Specifically, Gant contends that defendants added the condition that he pay a criminal special assessment which remained outstanding.[1] Moreover, Gant submits that he had paid the assessment during his term of incarceration. Gant states his claim as follows:

> By ignoring the original [sic] court order and by abuse of descretion [sic] the Probation Department, with deliberate intent, and with deliberate indifference, attempted to have Gants [sic] supervised release revoked and return him to prison for a violation which did not exist, inflicting tremendous emotional [sic] distress on Gant, as well as his family. By taking these meger [sic] funds from Gants [sic] family, the Probation Department subjected Gant, and his family, to crule [sic] and unusual punishment by denying basic necessities of life.

(Compl. at 3.) Gant states three legal bases for his suit: (1) the Federal Tort Claims Act[2] ("FTCA"); (2) *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcot-*

---

1. Because of differences in sequencing between the Judgment in a Criminal Case form ("JNC"), this court's standing Order adopting standard conditions of supervision, and the Probation Office's supervision form which is signed by offenders, Gant believes that the Probation Office invalidly added a condition to his supervision. To be sure, the condition which Gant challenges is a standard condition set forth in this court's standing Order signed by all of the district judges and entered on September 29, 1989.

2. 28 U.S.C. § 1346 (1993); 28 U.S.C. §§ 2671–2680 (1994).

*ics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)[3]; and (3) 42 U.S.C. § 1983. Each of plaintiff's claims shall be discussed in turn.

## DISMISSAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court's inquiry is limited to the motion, memoranda in support and in opposition thereto, the complaint and the answer. "[A] motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989) (citation omitted) (quoting *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and *Johnson v. Mueller,* 415 F.2d 354, 355 (4th Cir.1969)). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993).

## ANALYSIS

### A. FTCA: Exhaustion of Administrative Remedies

■ Defendants challenge all three of Gant's legal bases for this action. First, defendants contend that Gant cannot sustain a cause of action pursuant to the FTCA because he has failed to exhaust his administrative remedies. The FTCA provides an exception to the principle of sovereign immunity which generally shields the United States from lawsuits. As a jurisdictional prerequisite, however, a plaintiff must first submit the claim to the appropriate federal agency within two years of accrual of the cause of action and await a final denial of the claim by the reviewing agency. 28 U.S.C. §§ 2401(b), 2675. In his response to the motion to dismiss, Gant concedes he has not filed an administrative tort action. Rather, he contends that such a course of action would be futile. Nonetheless, filing of an administrative claim is a jurisdictional requirement and cannot be waived. *Plyler v. United States,* 900 F.2d 41 (4th Cir.1990); *Henderson v. United States,* 785 F.2d 121 (4th Cir.1986); *Kielwien v. United States,* 540 F.2d 676 (4th Cir.1976). Thus, Gant's claim cannot be sustained under the FTCA.

### B. Section 1983: Failure to State a Claim

■ Second, defendants submit that Gant cannot state a claim for relief under § 1983. Section 1983 pertains to alleged constitutional violations committed by persons acting under color of state law. *See, e.g., Giancola v. State of W. Va. Dept. Of Public Safety,* 830 F.2d 547 (4th Cir.1987). Here, the defendants acted pursuant to federal law. *Bivens* provides the proper vehicle for redress of alleged constitutional violations committed by federal officers and employees, and Gant cannot bring such a claim under § 1983. *District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). Accordingly, Gant's § 1983 claim likewise must fail for failure to state a claim upon which relief can be granted.

### C. *Bivens* Claim

Third, defendants contend that although Gant can state a claim pursuant to *Bivens,* defendants are protected from civil liability under the doctrine of quasi-judicial immunity. There is very little law addressing the availability of immunity for probation officers. More importantly, there is no Fourth Circuit law addressing the issue in this context. Having considered defendants' arguments, as well as the law of other circuits, the court agrees that defendants are shielded from liability in this case. Moreover, the court finds that plaintiff's complaint, viewed in the light most favorable to him, fails to state a viable constitutional claim. Each of these points shall be addressed in turn.

#### 1. Failure to State a Claim

■ In both his complaint and his response to the motion to dismiss, Gant contends that Sales inflicted cruel and unusual

---

**3.** In *Bivens,* the Supreme Court established a direct cause of action under the Constitution against federal officials for the violation of constitutional rights.

punishment upon him in the process of collecting the special assessment. Gant's claim may only be viewed as stating an action under the Eighth Amendment.

 The Eighth Amendment prohibits punishments that, although not physically barbarous, involve the unnecessary and wanton infliction of pain. *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Among the inflictions of pain that are considered "unnecessary and wanton" are those that are "totally without penological justification." *Gregg v. Georgia,* 428 U.S. 153, 183, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). In evaluating an Eighth Amendment claim, "[n]o static 'test' can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Rhodes v. Chapman,* 452 U.S. at 346 (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (plurality opinion)). Ultimately it is the court's judgment that will be brought to bear on the question of the acceptability of a given "punishment." *Id.*

 In considering an Eighth Amendment claim the court must be mindful that it embodies "'broad and idealistic concepts of dignity, civilized standards, humanity, and decency ....'" *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Jackson v. Bishop,* 404 F.2d 571, 579 (8th Cir.1968)). To rise to the level of an Eighth Amendment violation, however, conduct that does not purport to be punishment "must involve more than ordinary lack of due care for the prisoner's interests or safety .... It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause

...." *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).

Gant's claim does not fit the pattern of cases that are recognized as cognizable claims under the Eighth Amendment. Examples of viable Eighth Amendment actions include: (1) claims concerning living conditions in prisons, *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); (2) claims regarding inmate housing assignments, *Pressly v. Hutto,* 816 F.2d 977 (4th Cir.1987); (3) claims relating to meals and food service, *Bolding v. Holshouser,* 575 F.2d 461 (4th Cir.), *cert. denied,* 439 U.S. 837, 99 S.Ct. 121, 58 L.Ed.2d 133 (1978); (4) denial of exercise to an inmate, *Mitchell v. Rice,* 954 F.2d 187, (4th Cir.), *cert. denied,* 506 U.S. 905, 113 S.Ct. 299, 121 L.Ed.2d 222 (1992); and (5) inmate claims regarding medical care, *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).[4] There are no allegations of barbaric or inhumane treatment. In fact, plaintiff makes no accusation that he was physically harmed or assaulted. As Gant's claim does not fit the paradigm of viable Eighth Amendment claims, the court finds that his action should be dismissed.

2. Immunity

Defendants also contend that they are shielded from civil liability under the protection of absolute immunity. Although defendants primarily rely upon absolute immunity, the issues of absolute and qualified immunity are so interrelated that both defenses will be discussed.

 a. *Absolute immunity.* Defendants contend that, as officers of the court, they are entitled to quasi-judicial immunity. As a general rule, judges are absolutely immune from suit and civil liability. *King v. Myers,* 973 F.2d 354, 356 (4th Cir.1992) (cit-

---

4. The court acknowledges that plaintiff may be relying on the Eighth Amendment's ban on excessive fines. In addition to protecting individuals against cruel and unusual punishment, the Eighth Amendment bars the attempt to collect a fine at a time when a defendant is unable through no fault of his own to pay it. *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). It does not protect a defendant who was able to pay the fine when it was imposed and who has presented no evidence of

his inability to pay it now, or of an attempt to collect it despite that inability, let alone that that inability does not involve his own fault. Gant clearly fails to state a claim based on this principle for any of a number of reasons, including: (1) he challenges the special assessment, not a fine, which is mandatory; (2) he has made no allegation that he was unable to pay the assessment; and (3) the fact that Gant paid the special assessment undermines any reliance on this Eighth Amendment principle.

ing *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)). Absolute immunity, as the term implies, is a complete defense to an action for civil damages. Unlike other affirmative defenses, absolute immunity essentially halts a lawsuit before the action is able to fully evolve. The doctrine of absolute immunity has been extended to shield other government actors performing judicial functions. *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). "Quasi-judicial immunity," as it is sometimes referred, has been recognized for probation officers sued for performing tasks "intimately associated with the judicial phase of the criminal process." *Id.* at 430.

The absolute immunity analysis requires the court to consider the function performed by an official rather than his position within the government. *Forrester v. White*, 484 U.S. 219, 223–24, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). The functional approach focuses on two inquiries: (1) the nature of the official's functions being challenged, and (2) whether the threat of exposure to civil liability would adversely impact upon the exercise of those functions. *Id.* at 224. For judicially-related functions specifically, the Supreme Court has enumerated six factors to be considered:

1) the need to assure that the individual can perform his functions without harassment or intimidation;

2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;

3) insulation from political influence;

4) the importance of precedent;

5) the adversary nature of the process; and

6) the correctability of error on appeal.

*Cleavinger v. Saxner*, 474 U.S. 193, 202, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985); *Butz v. Economou*, 438 U.S. 478, 512–13, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

One function for which probation officers uniformly have been granted absolute immunity is the preparation of presentence reports. *See, e.g., Dorman v. Higgins*, 821 F.2d 133, 136 (2d Cir.1987); *Demoran v.*

*Witt*, 781 F.2d 155 (9th Cir.1985); *Tripati v. INS*, 784 F.2d 345 (10th Cir.1986); *Hughes v. Chesser*, 731 F.2d 1489 (11th Cir.1984); *Spaulding v. Nielsen*, 599 F.2d 728 (5th Cir. 1979); *Burkes v. Callion*, 433 F.2d 318 (9th Cir.1970), *cert. denied*, 403 U.S. 908, 91 S.Ct. 2217, 29 L.Ed.2d 685 (1971). As explained by the *Dorman* court, probation officers act "as an arm of the court" when amassing and providing the court enough information to meaningfully perform its sentencing obligations. 821 F.2d at 137.

> Indeed, the sentencing judge's need for complete and accurate information about an offender requires that he enjoy a relationship of the utmost trust and confidentiality with the federal probation officer. In order to assure candor in this relationship, probation officers must not be subject to harassing and vexatious litigation brought by convicted offenders who are predictably unhappy about their sentences.

*Schiff v. Dorsey*, 877 F.Supp. 73, 77 (D.Conn. 1994).

In contrast, most courts have held that a probation officer is not protected by absolute immunity for his role in initiating probation/supervised release revocation proceedings and seeking an arrest warrant. *See Griffin v. Leonard*, 821 F.2d 1124 (5th Cir. 1987); *Ray v. Pickett*, 734 F.2d 370 (8th Cir.1984); *Galvan v. Garmon*, 710 F.2d 214 (5th Cir.1983); *Gelatt v. County of Broome*, 811 F.Supp. 61 (N.D.N.Y.1993). *See also Mee v. Ortega*, 967 F.2d 423 (10th Cir.1992) (parole officer's decision to hold parolee pending parole revocation hearing was not protected by absolute immunity); *Johnson v. Rhode Island Parole Bd. Members*, 815 F.2d 5 (1987) (qualified immunity for parole officer conducting an arrest); *Nelson v. Balazic*, 802 F.2d 1077 (8th Cir.1986) (no absolute immunity for parole officer for claim arising from arrest and detainment of parolee prior to revocation proceeding). In these cases, the courts generally analogized the official's role to be akin to that of a police officer. *See Johnson*, 815 F.2d at 8. Additionally, the courts were troubled by the fact that irreparable harm—deprivation of liberty—occurred prior to any opportunity to address perceived

constitutional wrongs inflicted upon the plaintiff. *See Gelatt,* 811 F.Supp. at 67.

Here, Gant's claim places Sales somewhere between the two scenarios discussed above. Gant's complaint relates to the fact that Sales had petitioned the court for a revocation proceeding. Nonetheless, a summons, not an arrest warrant, was issued to secure Gant's appearance. Moreover, the revocation hearing itself never occurred; Gant voluntarily complied with Sales' request. Finally, insofar as Gant primarily focuses on Sales' attempts to collect the special assessment which was imposed by the court during sentencing, Sales was simply enforcing a court order.[5] Thus, the court finds two significant distinctions between the instant action and the qualified immunity cases cited above: (1) Gant was not arrested and incarcerated prior to the scheduled revocation hearing,[6] and (2) Gant primarily opposes the collection of the special assessment, not the collection of information supporting the revocation petition.

In light of the six factors set forth by the Supreme Court, this court finds that Sales' conduct was so intertwined with the judicial process as to be protected by absolute immunity. Sales was simply enforcing a court order when he attempted to collect the special assessment. At no time did Gant suffer a deprivation of liberty. Moreover, there are numerous procedural safeguards in the revocation process which serve to protect a supervised releasee/probationer:

> [W]hen a federal probation officer files a petition for [supervised release] revocation, that petition does nothing but initiate regularized judicial procedures which may or may not result in [supervised release] revocation. Indeed, the petition does not even prompt a [supervised release] revocation hearing unless the district judge issues an order to show cause. That order, in turn, merely triggers a revocation hearing under Rule 32.1 of the Federal Rules of Criminal Procedure. At this hearing,

the [supervised releasee] must be afforded the opportunity to contest allegations that he has violated the terms of his [supervised release], to produce witnesses who will offer relevant testimony, to cross-examine adverse witnesses and to be represented by an attorney. Such adversarial proceedings are designed to protect against the erroneous deprivations of a [supervised releasee's] rights. Furthermore, a [supervised releasee] is entitled to appeal from revocation of his [supervised release].

*Schiff,* 877 F.Supp. at 78–79 (citations omitted). Gant was presented with a proper forum to support his assertion that he had previously satisfied his court obligation. Rather than attend the revocation hearing, Gant chose to pay the special assessment in spite of his protest. To state it simply, Gant chose not to pursue his claim in the proper forum. Accordingly, defendants are absolutely immune against Gant's claim.

b. *Qualified immunity.* Even if defendants are not cloaked in absolute immunity, Gant's constitutional claim would be precluded by qualified immunity. In contrast to absolute immunity, qualified immunity shields a government official from liability for civil monetary damages if the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Akers v. Caperton,* 998 F.2d 220, 226 (4th Cir.1993). In determining whether the defense is available, the "judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred.... Until this threshold immunity question is resolved, discovery should not be allowed." *Harlow,* 457 U.S. at 818.

The qualified immunity analysis employs an objective reasonableness standard. *Anderson v. Creighton,* 483 U.S. 635, 639, 107

---

**5.** The Court of Appeals for the Tenth Circuit has extended absolute immunity to officials charged with directly enforcing court orders. *Valdez v. City and County of Denver,* 878 F.2d 1285 (10th Cir.1989).

**6.** At least one other court has found this distinction to be substantial. *See Schiff,* 877 F.Supp. at 79 n. 2. *See also Dorman v. Simpson,* 893 F.Supp. 1073, 1082 (N.D.Ga.1995) (according absolute immunity to federal probation officers for their role in issuing violator warrants).

S.Ct. 3034, 97 L.Ed.2d 523 (1987). In this case, the court must determine whether Sales acted in an objectively reasonable manner in seeking to collect the special assessment and, ultimately, in petitioning the court to revoke Gant's term of supervised release. First, the court finds that Gant has failed to allege the violation of a clearly established right. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 640. As previously discussed, the court finds that Gant's contentions do not relate to a clearly established right. The Eighth Amendment simply does not protect against the lawful collection of a criminal penalty. Second, Sales' actions in seeking to collect the special assessment, and subsequently filing a petition for revocation, were objectively reasonable. Sales was merely carrying out his duty to enforce the previously entered court order. Viewing the pleadings in the light most favorable to plaintiff, there is no question that Sales' actions were objectively reasonable. As a result, defendants are protected, at a minimum, by the doctrine of qualified immunity.

## CONCLUSION

The court agrees with defendants and finds that this action should proceed no further. Plaintiff has failed to exhaust his administrative remedies and, thus, cannot sustain a cause of action under the FTCA. Additionally, plaintiff cannot maintain a § 1983 claim against defendants who are federal officers. Finally, plaintiff has failed to state a viable constitutional claim pursuant to *Bivens*. Even assuming that plaintiff has adequately alleged a violation of his Eighth Amendment rights, the court finds that the defendants are shielded from civil liability under the umbrella of immunity. Accordingly, the court GRANTS defendants' motion to dismiss.

The Clerk is directed to send copies of this Memorandum Opinion to plaintiff, pro se, and counsel of record.