. **Glenn LUCAS, et al.**

**v.**

**The PARISH OF JEFFERSON, et al.**

**Civil Action No. 97–1513.**

United States District Court,
E.D. Louisiana.

March 31, 1998.

Glen Lucas, Harvey, LA, pro se.

Terry Boudreaux, Michael J. Reynolds, Gretna, LA, Darryl Jackson, New Orleans, LA, for Defendants.

### ORDER AND REASONS

BERRIGAN, District Judge.

Defendant, Michael Reynolds ("Reynolds"), has filed a Motion for Summary Judgment on the basis (1) that he is absolutely immune from suit under 42 U.S.C. § 1983;

and (2) that the petitioners, Glenn and Eva Lucas ("the Lucases") have failed to state a claim upon which relief can be granted. For the reasons that follow, the motion is DENIED.

*Procedural History*

According to the petition filed in this matter [1], as well as other court documents (Rec. Docs. 1 & 83), the Lucases pled guilty on January 10, 1995, to violating La.Rev.Stat. § 14:56, simple criminal damage to property under $100, a misdemeanor. They were sentenced that same day to imprisonment in parish prison for six months; the sentence was suspended and they were placed on inactive probation for a period of six months. Restitution was ordered to be paid to the victim within ninety (90) days. It is uncontested that the period of probation was completed and as a result the sentence satisfied. La.Code Crim. Proc. art. 898.

On September 11, 1996, Reynolds, in his capacity as an assistant district attorney, filed a Rule to Revoke Probation on both Lucases. This was based on a complaint from the victim that restitution had never been paid. It is uncontested that this motion was filed *after* the Lucases' terms of probation had expired. Even the facts alleged in the petition by Reynolds indicated that the probation was completed [2]. Nevertheless a summons was issued for the Lucases to appear on October 30, 1996. The summons was sent to an address where the Lucases no longer lived. When they failed to appear on October 30, an arrest warrant was apparently issued. On March 4, 1997, Eva Lucas was arrested and remained incarcerated without bail for eight days. Glenn Lucas turned himself in on March 5, 1997, and was incarcerated without bail for fourteen days. When the Rule to Revoke was brought up for hearing, it was dismissed.

---

1. The original petition contained allegations against a number of different defendants covering a series of facts and incidents. Only the facts pertinent to this defendant and this motion are discussed here.

2. The Rule to Revoke Probation, filed on September 11, 1996, stated that the Lucases had been placed on one year probation on January 9, 1995. If that was correct, the probation expired on January 9, 1996 and the Rule to Revoke was

eight months too late. According to the January 1995, court minutes, the Lucases were actually placed on six months probation which means the Rule to Revoke was fourteen months too late. At oral argument, counsel for Reynolds stated that the term was actually extended until August, 1995. Assuming that to be true, the Motion to Revoke was still a month too late, as counsel conceded.

The Lucases subsequently filed suit, alleging false imprisonment and malicious prosecution, in violation of 42 U.S.C. § 1983, among other federal and state statutes. Reynolds filed for summary judgment on the basis that he is absolutely immune from suit and on the basis that the Lucases failed to state a claim upon which relief could be granted. The failure to state a claim contention can be denied summarily. The motion is based on the assumption that *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), required the Lucases to first have their original conviction and sentence declared invalid in order to recover damages. In the claim against Reynolds, however, the Lucases are not challenging the validity of their original conviction and sentence. They are alleging, correctly in fact, that *after* their sentences of probation were completed, Reynolds filed an untimely motion to revoke probation which resulted in their improper arrest and detention as probation violators. *Heck, supra,* is simply inapplicable.

The balance of this opinion deals with the far more difficult issue of immunity.

*Legal Principles*

Two kinds of immunity exists for government officials—absolute immunity and qualified immunity. Absolute immunity protects a person from being sued in connection with his duties altogether, regardless of the merit of the claim. Qualified immunity protects an official from liability unless the official violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Most public officials are entitled to only qualified immunity. *Harlow, supra.* "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed,* 500 U.S. 478, 486–487, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). Only in "exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of the public business" will such immunity be afforded. *Butz v. Economou,* 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The rationale has been eloquently expressed by the Supreme Court:

> Our system of jurisprudence rests on the assumption that all individuals, whatever their position in government, are subject to federal law:
>
> "No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government from the highest to the lowest, are creatures of the law, and are bound to obey it." *United States v. Lee,* 106 U.S. 196, 220, 1 S.Ct. 240, 261, 27 L.Ed. 171.

*Butz,* 438 U.S. at 507.

The Supreme Court has been "quite sparing" in endorsing absolute immunity, refusing to expand it beyond what is justified and placing the burden on the official to show that it is warranted under the particular circumstances. *Id.; Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); see also *Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

Section 1983 provides that anyone who acts under color of state law to deprive another of a constitutional right is liable to that person in damages. The statute does not provide for any immunity from liability for anyone. Nevertheless, the United States Supreme Court has interpreted the statute in the context of the common law immunities that existed at the time the law was originally enacted in 1871. For example, in *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), the high court held that state legislators had absolute immunity for acts committed in their legislative roles, since such immunity existed in common law. Likewise, in *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), judges were found to be absolutely immune from § 1983 actions since they were similarly immune under common law at the time the statute was passed.

In 1871, when § 1983 was originally enacted, prosecutors apparently did not enjoy a common law immunity from suit. Neverthe-

less, common law did subsequently develop which held that prosecutors were immune from liability for law suits based on malicious prosecution. *Imbler v. Pachtman,* 424 U.S. 409, 420–421, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In *Imbler,* the Supreme Court dealt for the first time with the § 1983 liability of prosecutors and concluded that a state prosecuting attorney is entitled to absolute immunity from such a suit when he is "initiating and pursuing a criminal prosecution..." *Imbler,* 424 U.S. at 410. Aside from the support from the prior common law, the Supreme Court's rationale was that without such immunity, the prosecutor would be subjected to continuous and mostly nonmeritorious law suits by disgruntled defendants, distracting him from his primary duties and dampening his enthusiasm for his responsibilities. The high court found that qualified immunity provided insufficient protection since trial decisions are often made under severe constraints of time and information that can too easily be picked apart in hindsight. On balance, the Court concluded that the lack of redress for a genuinely wronged defendant was offset by the need to protect prosecutors from nonmeritorious litigation. The Court was clear, however, in limiting its decision: "We hold only that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler,* 424 U.S. at 430. They focused on those activities that were "intimately associated with the judicial phase of the criminal process" and expressly declined to comment on whether such absolute immunity extended to "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of an advocate." *Imbler,* 424 U.S. at 430–431.

In distinguishing between the different roles a prosecutor plays, the Supreme Court introduced a "functional approach" to deciding whether absolute or qualified immunity should apply to the particular conduct challenged in the case. This approach focuses on " 'the nature of the function performed, not the identity of the actor who performed it.' "

*Buckley,* 509 U.S. at 269, *quoting Forrester,* 484 U.S. at 229. In other words, whether a person is entitled to absolute immunity depends less on his particular job title and more on the specific tasks he executed that are being challenged. Under this rationale, a person, such as a prosecutor, could have absolute immunity for some of his conduct but only qualified immunity for other of his job-related activities.

In *Burns, supra,* the high court held that a prosecutor was absolutely immune from suit for his actual participation in a judicial hearing to determine probable cause to issue a search warrant.[3] At the same time, the Court found him entitled to only qualified immunity for out-of-court legal advice he gave to the police in their investigation of the same suspect. The Court cited the lack of common law support for absolute immunity in the latter situation and further opined that rendering such advice was detached from the judicial phase of the criminal process.

The high court revisited the issue in *Buckley, supra.* They reiterated that qualified immunity represents the norm and that actions of a prosecutor are not absolutely immune simply because he is a prosecutor.

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other."

*Buckley,* 509 U.S. at 273.

The Supreme Court concluded that a prosecutor functions as an investigator rather than an advocate prior to probable cause to arrest being established or judicial proceedings being initiated, and therefore is entitled to only qualified immunity in that role. The

---

**3.** The Court commented several times that the petitioner was challenging the prosecutor's actions only at the judicial hearing itself, and not his motivation in seeking the warrant or his activities outside the courtroom relating to the warrant. *Burns,* 500 U.S. at 487.

Court was quick to add, however, that a determination that probable cause exists does not guarantee that absolute immunity applies to all his actions thereafter. In *Buckley,* the prosecutor was accused of fabricating evidence during the investigation of a crime and of making inflammatory remarks during a press conference announcing the plaintiff's arrest. The Supreme Court found neither action protected by absolute immunity; only qualified[4].

In *Kalina v. Fletcher,* —— U.S. ——, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997), the Supreme Court found only qualified immunity for a prosecutor who allegedly made false statements in an affidavit supporting an application for an arrest warrant. The high court noted that testifying about facts is the function of a witness, not an advocate, and when the prosecutor elects to function as a witness, only qualified immunity is appropriate.

The Fifth Circuit has been "mindful of the Supreme Court's cautionary approach to extending the shield of absolute immunity and the Court's admonition that the burden is on the official seeking such protection to justify it." *Farrish v. Mississippi State Parole Board,* 836 F.2d 969, 976 (5th Cir.1988). In *Ryland v. Shapiro,* 708 F.2d 967 (5th Cir. 1983), the Fifth Circuit found only qualified immunity for prosecutors accused of falsifying a death certificate and covering up a murder for a period of nearly a year[5]. In the very recent decision of *Sanchez v. Swyden,* 131 F.3d 1144 (5th Cir.1998), the Fifth Circuit dealt with a § 1983 action lodged against a prosecutor who had filed a motion to remove a fugitive complaint from the docket of the local court. Citing *Imbler, Burns* and *Buckley,* among other cases, the Fifth Circuit concluded that filing the motion, was an administrative function and entitled the prosecutor to qualified but not absolute immunity. This was true even though the motion was filed with the court and presumably required court action. The appellate court stated that prosecutors are entitled to

absolute immunity arising out of their acts "geared towards the initiation of a prosecution or in preparation for judicial proceedings." 131 F.3d at 1147. The court apparently meant judicial proceedings associated with the initial prosecution, since filing the motion unquestionably triggered judicial proceedings yet was considered to merit only qualified immunity.

Turning to a significant decision closer to our issue, the Fifth Circuit, in the post-*Imbler* decision of *Galvan v. Garmon,* 710 F.2d 214 (5th Cir.1983), *cert. denied,* 466 U.S. 949, 104 S.Ct. 2150, 80 L.Ed.2d 536 (1984), held that a *state probation officer* who moves to revoke probation is protected only by qualified immunity. The Fifth Circuit had previously found absolute immunity to apply to a probation officer's preparation and submission to the court of a presentence report. *Spaulding v. Nielsen,* 599 F.2d 728 (5th Cir. 1979). Noting that qualified immunity is the norm and absolute immunity the exception, the court found that unlike a presentence report which is done at the direction of the court, "the probation agent (moving to revoke) acted at her own initiative and at a different phase of the criminal process less intimately associated with the judiciary." *Galvan,* 710 F.2d at 215.

Similarly, the Eighth Circuit concluded that a federal probation officer is entitled to only qualified immunity in moving to revoke parole. *Ray v. Pickett,* 734 F.2d 370 (8th Cir.1984). The court outlined the process of revocation: if the probation officer believes a violation has occurred, he files a report to the parole commission; the commission in turn may issue a summons for the alleged violator or an arrest warrant; the parolee is then afforded a hearing to determine if revocation is appropriate. The reporting officer does not make the actual decision to revoke. The Eighth Circuit found that the parole violation report "is merely to trigger an inquiry by another officer that may or may not lead to an administrative proceeding" and concluded

---

4. The alleged fabrication of evidence occurred prior to probable cause to arrest. With regard to the press conference, the Court found that remarks to the media have no functional connection to a judicial proceeding.

5. The alleged murderer was a prosecutor in the same office.

that "this function (is not) so intimately associated with the judicial process that it entitles probation officers to an absolute immunity." *Ray*, 734 F.2d at 370. Notably, the court discussed *Imbler* and whether an analogy could be made between a probation officer's initiating revocation proceedings and a prosecutor initiating a criminal prosecution. The court found a distinction. Unlike initiation of prosecution, which is within the discretion of the prosecutor, the report of the probation officer is subject to review by the parole commission which makes the decision whether to issue a summons or arrest warrant or hold a hearing. The court found the probation officer's function to be "more akin to that of a police officer in deciding whether there is probable cause for an arrest than it is to that of a prosecutor in deciding whether to initiate a prosecution." *Ray*, 734 F.2d at 370. As with a police officer, only qualified immunity applied. Accord *Wilson v. Kelkhoff*, 86 F.3d 1438 (7th Cir.1996).

Several district courts elsewhere have also dealt with this issue. In *Felker v. Christine*, 796 F.Supp. 135 (M.D.Pa.1992), *aff'd*, 983 F.2d 1050 (3d Cir.1992), a probation officer sought the advice of the prosecutor on whether he, the officer, should have moved to revoke the plaintiff's probation. The prosecutor gave his advice and approval. Citing *Burns, supra*, the district court found no absolute immunity for the prosecutor's conduct. On the other hand, in *Roberts v. Ross*, 680 F.Supp. 1144 (S.D.Ohio 1987), a prosecutor himself moved for probation revocation after the term had expired. Finding no meaningful distinction between a decision to prosecute for probation violation as opposed to initiate an original criminal prosecution, the court concluded the prosecutor was entitled to absolute immunity. The *Roberts* decision is factually very similar to the circumstances in this case.

*Is Reynolds Entitled to Absolute Immunity?*

The Supreme Court has acknowledged that drawing the line between administrative and investigative functions of a prosecutor on the one hand, and his advocacy functions on the other, "may present difficult questions." *Buckley*, 509 U.S. at 276, fn. 7 [6].

■ One of those difficult questions is presented in this case. When a Louisiana state prosecutor files a motion to revoke probation, is he clothed with absolute immunity or only qualified?

The decision in *Roberts, supra*, seems at least superficially persuasive—the decision to initially prosecute an individual is protected by absolute immunity, ergo so should the decision to move to revoke probation. But the analogy breaks down under closer examination. The Supreme Court has repeatedly warned, and the Fifth Circuit has acknowledged, that qualified immunity is the norm and that only in "exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of the public business" will such immunity be afforded. *Butz*, 438 U.S. at 508. The common law support for absolute immunity for prosecutors dealt with protecting them from charges of malicious prosecution. The primary duty of a prosecutor is to determine whether a person should be charged with a crime in the first place and, if so, to bring that person to trial. On the other hand, in Louisiana, the responsibility for probation supervision and reporting of violations to the court falls upon the probation officer, not the prosecutor. La.Code.Crim. Proc. art. 893. Additionally, one reason the Supreme Court gave for extending absolute immunity to trial-related proceedings involving the prosecution of a case is because the prosecutor often must act quickly, without knowing necessarily all the facts. Probationers, on the other hand, are

---

**6.** This difficulty is reflected in a number of law review articles analyzing the *Imbler–Burns–Buckley* trilogy, some praiseworthy, some critical. Jeffrey J. McKenna, *Prosecutorial Immunity: Imbler, Burns, and Now Buckley v. Fitzsimmons—The Supreme Court's Attempt to Provide Guidance in a Difficult Area*, 1994 B.Y.U. L.Rev. 663 (1994); James J. Kenner, *Prosecutorial Immunity: Removal of the Shield Destroys the Effectiveness of the Sword*, 33 Washburn L.J. 402 (1994); *Buckley v. Fitzsimmons: The Supreme Court Limits Absolute Immunity Protection for Prosecutors*, 20 J. Contemp. L. 212 (1994); Megan M. Rose, *The Endurance of Prosecutorial Immunity—How the Federal Courts Vitiated Buckley v. Fitzsimmons*, 37 B.C.L.Rev. 1019 (1996); Douglas J. McNamara, *Buckley, Imbler and Stare Decisis: The Present Predicament of Prosecutorial Immunity and an End to its Absolute Means*, 59 Alb. L.Rev. 1135 (1996).

monitored by probation agents on a regular basis and in the event of a sudden, serious alleged violation, the agent has the specific statutory authority to arrest the probationer himself or cause a police officer to do so. La.Code Crim. Proc. art. 899. Indeed, as this case illustrates, had the prosecutor contacted the probation department instead of going directly to the court, he may well have been advised that the probation had expired and revocation was not possible.

■ It is clear from both the Supreme Court and Fifth Circuit jurisprudence, that when a prosecutor takes on a function other than that of state advocate in a criminal prosecution, the scope of his immunity is curtailed accordingly. It is " 'the nature of the function performed, not the identity of the actor who performed it' " that matters in deciding whether absolute or qualified immunity applies. *Buckley,* 509 U.S. at 269 *quoting Forrester,* 484 U.S. at 229. In *Buckley,* the Court found that if a prosecutor performs the investigative work normally handled by a detective, it is neither appropriate nor justifiable for the prosecutor to enjoy greater immunity than the detective would have had.

La.Code Crim. Proc. art. 899 details the procedure for the arrest or summons of an individual for violation of probation. No mention is made of the prosecutor. Rather the statute appears to assume that such action will be initiated by the probation officer directly with the court. A review of Louisiana jurisprudence, *infra,* likewise indicates that rules to revoke are instigated by probation officers. At a minimum, then, when the prosecutor chooses to commence such a proceeding, he is· performing the function of a probation officer[7]. The Fifth Circuit held quite clearly in *Galvan, supra,* that probation officers when they move to revoke are only entitled to qualified immunity. Likewise here, Reynolds acted the function of a probation officer in moving to revoke, hence qualified but no absolute immunity appears the appropriate level of protection.

In addition to the *Galvan* decision which is binding within the Fifth Circuit, this court is particularly impressed with the reasoning of Judge Scullin in *Gelatt v. County of Broome, N. Y.,* 811 F.Supp. 61 (N.D.N.Y.1993) also dealing with the issue of immunity for probation officers in revocation proceedings. The defendant probation officer was sued under § 1983 for moving the court to sign a violation of probation notice and to issue an arrest warrant for the plaintiff probationer. The plaintiff was arrested and incarcerated pending her revocation hearing, at which time the revocation motion was dismissed. The defendant claimed absolute immunity, saying his actions were closely associated with the judicial process and/or that he was functioning akin to a prosecutor. Judge Scullin cited the Fifth Circuit's *Galvan* decision, then added a thoughtful analysis of his own. He pointed out that the Supreme Court has suggested several factors in deciding whether judicial-related absolute immunity is appropriate, including whether other safeguards against prosecutorial mistakes exist, such as an adversary proceeding and the correctability of error on appeal. *Gelatt,* 811 F.Supp. at 66, *citing Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). Judge Scullin then compared the preparation of presentence reports, which are protected by absolute immunity, with the activity involved in moving to revoke probation. He noted, as had *Galvan,* that a presentence report is initiated by the court while motions to revoke come first from the probation agent. He further noted that the sentencing process is adversarial, with defendant and defense counsel present to challenge adverse findings in the presentence report. On the other hand, the motion to revoke is a one-sided presentation, with no opportunity ' for the probationer or his attorney to protest prior to arrest and detention pending the hearing. Sentencing errors are often subject to appeal prior to actual incarceration; the pre-hearing detention of a probationer on an invalid revocation hold cannot be undone. For those reasons, Judge Scullin found the function of the probation officer in submitting a violation

---

7. Reynolds may well claim that since the Lucases were placed on "unsupervised" probation, no agent was available to monitor and/or report violations. Even assuming that is correct, Reynolds is still performing the analogous function.

report and in requesting a warrant to be a nonjudicial function.

Turning to the second argument, that the agent's conduct was analogous to that of a prosecutor, Judge Scullin found it more anal-. ogous to the police officer seeking an arrest warrant. In both instances, the agent and the officer present to the court their allegations of the suspect/probationer's wrongdoing that justify detention. Since police officers are only entitled to qualified immunity in such circumstances, likewise probation agents performing the analogous function, are entitled to no more[8]. This analysis is consistent with the Supreme Court's holding in *Kalina, supra,* that allowed only qualified immunity for a prosecutor who allegedly false statements in an affidavit supporting an application for an arrest warrant, since he was performing the role of a witness. It is also consistent with *Buckley, supra,* where the Supreme Court concluded that the prosecutor's function in allegedly falsifying evidence prior to formal charges was akin to a detective gathering clues and corroboration which might give him probable cause to arrest. Just as a detective is only entitled to qualified immunity, so was the prosecutor.

Here, Reynolds performed the function of a probation officer, which, similar to that of a police officer, consisted of asserting to the court that probable cause existed to summon/arrest the Lucases for possible probation violations. Just as a probation officer or a police officer, Reynolds was entitled to the same immunity, no less and certainly no more.

For all the reasons above, this Court finds that Reynolds' actions in moving to revoke the Lucases' probation were not protected by absolute immunity under Lucases' § 1983 claim.

*Is Reynolds Protected under Qualified Immunity?*

 While this Court does not find Reynolds protected by absolute immunity, he is entitled to assert a qualified immunity defense. Under that defense, he is immune from suit unless he violated the Lucases' "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818.

 As has been conceded by counsel for Reynolds, the motion to revoke was a mistake. Years before it was filed, it was "well settled that once a probationary period has elapsed the defendant has automatically satisfied the sentence imposed." *State v. Weysham,* 410 So.2d 1104 (La.1982)[9]. Furthermore, a non-fugitive defendant can be ordered to appear on probation violations only if the summons occurred during the period of probation. *Id.* None of that occurred here. Reynolds violated the Lucases clearly established rights in moving to revoke their probation.

 Furthermore, in Louisiana, a probation revocation proceeding begins with either the issuance of a warrant for the defendant's arrest or a summons for his appearance to answer the charge. La.Code. Crim. Proc. art. 899. To be valid, the warrant or summons must be accompanied by a sworn affidavit from a complainant. La. Code.Crim. Proc. arts. 202 & 209; *State v. Krummel,* 593 So.2d 1368 (La.App. 5th Cir. 1992), *writ denied,* 597 So.2d 1028 (La.1992); *State v. Forest,* 571 So.2d 893 (La.App. 5th Cir.1990), *writ denied,* 577 So.2d 13 (La. 1991); see also *State v. Duhon,* 674 So.2d 944 (La.1996). It does not appear from the record here that Reynolds executed such a sworn affidavit. He simply filed the Rule to Revoke.

The 24th Judicial District Court lies within Louisiana's Fifth Circuit Court of Appeal.

8. To demonstrate the difficulty in determining when absolute or qualified immunity is appropriate, another district court used the same factors cited by Judge Scullin but concluded that probation officers *were* entitled to absolute immunity in their motions to revoke, at least when such a motion did not result in detention. *Schiff v. Dorsey,* 877 F.Supp. 73 (D.Conn.1994).

9. It is worth noting that in the *Roberts* decision, *supra,* the trial judge stated if qualified immunity only applied, the prosecutor would be unprotected. "It is crystal clear that a person who is no longer on probation cannot be taken into custody for a probation violation." *Roberts,* 680 F.Supp. at 1146, fn. 2.

848

For a number of years prior to this motion to revoke being filed, that appellate court had repeatedly vacated probation revocations for failure of the warrant or summons [10] to be based upon the required sworn statement. *State v. Johnson*, 602 So.2d 729 (La.App. 5th Cir.1992), *writ denied*, 601 So.2d 663 (La. 1992); *State v. Krummel, supra; State v. Norwood*, 587 So.2d 75 (La.App. 5th Cir. 1991); *State v. Forest, supra; State v. Morgan*, 567 So.2d 677 (La.App. 5th Cir.1990), *writ denied*, 573 So.2d 1132 (La.1991).

Consequently, in addition to filing an untimely motion to revoke, Reynolds failed to provide the requisite affidavit. This serves as an additional violation of the Lucases' rights which were clearly established at the time.

*Conclusion*

For the above reasons, the Court finds that defendant Reynolds is entitled to neither absolute nor qualified immunity and therefore the motion for summary judgment is DENIED.

---

**10.** The Louisiana Supreme Court has found that an order attached to a rule to revoke, such as the one in this case, is equivalent to a summons to appear. *State v. Broussard*, 408 So.2d 909 (La. 1981); see also *State v. Forest, supra*.